In re MID–ATLANTIC TOYOTA
ANTITRUST LITIGATION.

MARYLAND ex rel. SACHS

v.

MID–ATLANTIC TOYOTA DISTRIBU-
TORS, INC., et al.

DELAWARE ex rel. GEBELEIN

v.

MID–ATLANTIC TOYOTA DISTRIBU-
TORS, INC., et al.

WEST VIRGINIA ex rel. BROWNING

v.

MID–ATLANTIC TOYOTA DISTRIBU-
TORS, INC., et al.

DISTRICT OF COLUMBIA ex
rel. ROGERS

v.

MID–ATLANTIC TOYOTA DISTRIBU-
TORS, INC., et al.

COMMONWEALTH OF PENNSYLVA-
NIA on Its own Behalf and as
Parens Patriae

v.

MID–ATLANTIC TOYOTA DISTRIBU-
TORS, INC., et al.

MDL No. 456–Y.
Civ. A. Nos. Y–80–3238, Y–81–650, Y–81–
726, Y–81–805 and Y–81–1880.

United States District Court,
D. Maryland.

Oct. 14, 1981.

Michael F. Brockmeyer, Asst. Atty. Gen., Baltimore, Md., for plaintiffs.

Raymond W. Bergan, Williams & Connolly, Washington, D. C., for defendants.

Edward F. Kafader, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for State of Delaware.

Donald L. Darling, Asst. Atty. Gen., Charleston, W. Va., for State of West Virginia.

Timothy J. Shearer, Asst. Corp. Counsel, Washington, D. C., for District of Columbia.

Eugene F. Waye, Deputy Atty. Gen., Harrisburg, Pa., for State of Pennsylvania.

Bertram M. Long, Asst. Atty. Gen., Richmond, Va., for State of Virginia.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

The above-captioned actions represent five of the seven lawsuits consolidated in the Mid-Atlantic Antitrust Litigation and assigned to this Court by the Judicial Panel on Multidistrict Litigation. The cases at issue here are all those filed by state attorneys general, and the Corporations Counsel of the District of Columbia pursuant to the *parens patriae* provisions of the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the Act), 15 U.S.C. §§ 15c–h (1981). The complaints allege certain violations of the federal antitrust laws, particularly price-fixing. The *parens* plaintiffs are seeking treble damages, declaratory and injunctive relief, and costs and fees from the defendants on behalf of state residents who purchased Toyota vehicles with a protective finish and certain accessories collectively referred to as "polyglycoat." Plaintiffs allege that the defendants [1] conspired with one another to fix an artificially high price for this polyglycoat finish in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and seek

---

1. Defendants are Mid-Atlantic Toyota Distributors, Inc., (MAT); Carecraft Industries, Ltd. (Carecraft), a business which sells protective finishes to automobile dealers; Frederick R. Weisman (Weisman), an officer and director of both MAT and Carecraft; and various Toyota dealerships in Maryland, Delaware, Pennsylvania, West Virginia, and the District of Columbia.

treble damages under 15 U.S.C. § 15c(a)(2).[2] Defendants' motion to dismiss based on *Illinois Brick v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), was denied in *In re: Mid-Atlantic Toyota Antitrust Litigation*, 516 F.Supp. 1287 (D.Md., 1981). Defendants have also raised various other grounds for dismissal, including lack of personal jurisdiction over certain defendants, improper venue, failure to state a claim upon which relief can be granted, failure to comply with Rule 11, and the unconstitutionality of the Hart-Scott-Rodino Antitrust Improvements Act. The Court will deal with these contentions seriatim.

## I. PERSONAL JURISDICTION

### A. DEFENDANT WEISMAN

Frederick R. Weisman, one of the defendants and a California resident, challenges personal jurisdiction in all pending cases—Maryland, Delaware, District of Columbia, Pennsylvania and West Virginia.

#### 1. Maryland

■ The Maryland long arm statute, Md. Cts. & Jud.Proc.Code Ann. § 6–103(b)(3), provides that a court may exercise personal jurisdiction over a person who "[c]auses tortious injury in the State by an act or omission in the State." It is clear that a civil antitrust action is an action in tort. *Simpson v. Union Oil Co. of California*, 311 F.2d 764, 768 (9th Cir. 1963), *rev'd on other grounds*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); *Albert Levine Assoc. v. Bertoni and Cotti*, 314 F.Supp. 169, 171 (S.D.N.Y.1970). The tortious injury resulting from a price-fixing conspiracy occurs when a consumer pays the artificially inflated price to purchase the item. Therefore the conspiracy alleged here resulted in tortious injury in Maryland when Maryland Toyota dealers sold Toyotas with the polyglycoat finish in Maryland.

■ The complaint alleges that Weisman participated in a series of meetings, three of which took place in Maryland, in furtherance of the price-fixing conspiracy. Weisman argues that plaintiff has not shown he committed an act causing tortious injury because there is no allegation that he actually entered into the price-fixing agreement in Maryland. However, even if the final agreement were reached in another state, that agreement would not have been possible without the series of meetings in which the plan's details were negotiated. The meetings in Maryland were an integral part of the alleged price-fixing conspiracy. Therefore, by participating in the Maryland meetings, Weisman committed acts in Maryland that caused the alleged tortious injury in Maryland.

■ Weisman also argues that, to the extent that he participated in meetings concerning a price-fixing conspiracy, he did so in his capacity as a corporate director, so those acts cannot serve as a basis for personal jurisdiction over him in his individual capacity. However, the holding in *Merkel Associates, Inc. v. Bellofram Corp.*, 437 F.Supp. 612 (W.D.N.Y.1977), explains why this principle of distinguishing individual from corporate acts does not apply to Weisman. In that case, the court found that jurisdiction over individual defendants, officers of the corporate defendants, could not be based upon their corporate activities. The court stated that when a corporate officer enters New York on corporate business, he should not be deemed to have "transacted business" or to have engaged in a "persistent course of conduct" in New York for purposes of personal jurisdiction over him in his individual capacity. However, the court noted that:

> [t]he purpose of such a 'fiduciary shield' from long-arm jurisdiction is to protect such corporate officers from unreasonable and unjust subjection to personal jurisdiction, not to protect them from liability. This shielding should not be unlimited.

*Id.* at 618. The "fiduciary shield" does not apply where a corporate officer has allegedly committed a personal or business tort

---

within the state. *Id.* at 619. In such a situation, there would be personal jurisdiction over the defendant in his individual capacity, under the section of the long arm statute providing for personal jurisdiction over a person who commits a tortious act within the state. *Id.* In the instant case, it is alleged that Weisman committed a business tort in Maryland by participating in meetings in furtherance of a price-fixing conspiracy. Therefore, there is personal jurisdiction in Maryland over Weisman in his individual capacity under Mt.Cts. & Jud. Proc.Code Ann. § 6–103(b)(3). Other courts have found jurisdiction proper in similar circumstances. *See, e. g., Ohio-Sealy Mattress Manufacturing Co. v. Kaplan,* 429 F.Supp. 139 (N.D.Ill.1977).

### 2. Delaware

Plaintiff properly bases personal jurisdiction over Weisman in Delaware on 10 Del. Code § 3114 which provides:

Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes his residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as his agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of his duty in such capacity, whether or not he continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such

director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable.

Weisman is president and sole director of MAT and Carecraft, both Delaware corporations. Weisman, as director of MAT and Carecraft, has been served pursuant to 10 Del. Code § 3114.

Thus, if the statute applies and is constitutional, the district court in Delaware has personal jurisdiction over Weisman.

■ Weisman contends that 10 Del. Code § 3114 is unconstitutional in light of the due process requirement of minimum contacts. The Court in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1976), rejected an argument that the acceptance of a directorship in a Delaware corporation established minimum contacts with Delaware and could therefore serve as the basis for personal jurisdiction over the defendants. However, when the Delaware legislature drafted 10 Del. Code § 3114 in response to *Shaffer, see Armstrong v. Pomerance,* 423 A.2d 174, 179 n.8 (Del.1980), the legislature specifically addressed the issues that had troubled the Court in *Shaffer.* As a result, the Delaware Supreme Court has held 10 Del. Code § 3114 constitutional. *Armstrong, supra,* at 174 (minimum contacts test met even though defendants' only contact with Delaware was their acceptance of directorships in a Delaware corporation). This Court agrees with that holding.

In *Shaffer,* the plaintiffs sued officers and directors of the Greyhound Corporation, a Delaware corporation, for breach of fiduciary duty. The action was brought in Delaware. Plaintiffs pleaded *quasi in rem* jurisdiction based upon a Delaware statute providing for jurisdiction over the stock of Delaware corporations and upon the fact that the defendants held Greyhound stock. The Supreme Court found that such jurisdiction was unconstitutional. First, the Court held that the Due Process Clause

required that even *in rem* jurisdiction had to be based upon "minimum contacts" with the state. 433 U.S. at 209–212, 97 S.Ct. at 2582–2584. The Court next examined plaintiff's argument that defendants' positions as directors in a Delaware corporation constituted sufficient contacts to sustain jurisdiction. *Id.* at 213, 97 S.Ct. at 2584. Plaintiffs argued first, that the state had a strong interest in supervising the management of a Delaware corporation, because Delaware law created the corporation and defined the obligations owed to it by its directors and officers. *Id.* at 213, 97 S.Ct. at 2584. Plaintiffs also argued that Delaware would be a fair forum for litigating issues of corporate fiduciaries' liabilities, because when defendants became directors of a Delaware corporation, they accepted significant benefits and protections under Delaware law.[3] *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958).

The Court rejected the first argument, observing that the Delaware legislature had not asserted a state interest in governing corporate fiduciaries, since the statute based jurisdiction not upon a defendant's position as a corporate director or officer but upon a defendant's ownership of property in Delaware. The Court also held that the benefits and protections afforded directors by Delaware law did not constitute sufficient contacts with the forum to justify jurisdiction over directors who had never been in Delaware. *Id.* 216, 97 S.Ct. at 2586. However, the Court noted that "Delaware, unlike some States, has not enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State," and that the defendants therefore "had no reason to expect to be haled before a Delaware court." *Id.*

These two objections are not applicable to the new statute, 10 Del. Code § 3114. First, the fact that jurisdiction is tied directly to acceptance of a directorship clearly demonstrates that Delaware believes it has a substantial interest in providing a forum for litigation concerning the activities of corporate fiduciaries. There are two compelling reasons for this interest—that a share-holder may be unable to bring a derivative suit anywhere else, either because no one state has jurisdiction over all the necessary defendants or because other states raise significant barriers to derivative suits, *e. g.*, bond requirements, that Delaware does not raise, *Armstrong, supra*, 423 A.2d at 178, and that Delaware desires to maintain control over the development of Delaware corporation law and thus provide consistency and certainty in interpretation. *Id.*

10 Del. Code § 3114 also responds to the concern expressed in *Shaffer* that the defendants had no reason to expect to be haled into court in Delaware. The new statute put every director on notice that he may be sued in a Delaware court for acts or omissions in his capacity as a corporate fiduciary.[4]

When one becomes a director of a Delaware corporation he necessarily has substantial contacts with the state of Delaware. He undertakes to guide the conduct of an entity governed by Delaware law and he subjects himself to Delaware law concerning corporate fiduciaries. In addition, he receives the benefits and protections of Delaware law governing corporate directors. *See, supra* at n.3. Even if these contacts with the form are viewed as minimal (by comparison, for example, with such contacts as physical presence or the transaction of business in the forum), the strong state interest in providing a forum justifies the exercise of jurisdiction. *See McGee v.*

---

**3.** These benefits and protections include: the power to manage the business and affairs of the corporation [8 Del.C. § 141(a)], the opportunity to receive interest-free unsecured loans from the corporation [8 Del.C. § 143], and the opportunity to receive indemnification in actions against them by reason of the fact that they are directors [8 Del.C. § 145].

**4.** 10 Del. Code § 3114 was modeled after the Connecticut and North Carolina statutes that were cited in *Shaffer* at 216 n.47, 97 S.Ct. at 2586 n.47 as examples of statutes that treated acceptance of a directorship as consent to jurisdiction. *Armstrong, supra*, 423 A.2d at 179 n.8.

*International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). There can be no question of the fairness of this exercise of jurisdiction when the defendant has voluntarily consented to jurisdiction.

For all these reasons, the Court concludes that 10 Del. Code § 3114 is constitutional.

Weisman also challenges the applicability of 10 Del. Code § 3114. The court in *Armstrong, supra*, at 1175, held that the statute provides for *in personam* jurisdiction in Delaware "in actions relating to defendant's capacity as director." Weisman would construe this to encompass only activities that are unique to corporate fiduciaries. Since all individuals, not just corporate fiduciaries, are subject to the antitrust laws, Weisman argues, 10 Del. Code § 3114 does not apply to an alleged violation of those laws.

■ The statute cannot be held to this narrow construction. The statute clearly states that a director consents to jurisdiction "in *all civil actions* or proceedings brought in this state, by or on behalf of, or against [the director's] corporation, *in which such director . . . is a necessary or proper party. . .*" 10 Del. Code § 3114 (emphasis added). When a director takes an action in his capacity as director of a corporation, he becomes a necessary, or at least a proper party to a civil suit against that corporation arising from that action and is subject to personal jurisdiction in Delaware. It is irrelevant whether another individual in a different capacity could have done the same act.[5]

■ If plaintiff Delaware can prove that Weisman's corporations, MAT and Carecraft, entered into a price-fixing agreement, then Weisman's participation in meetings concerning that agreement was obviously done in his capacity as sole director of MAT and Carecraft. Furthermore, in a suit against MAT and Carecraft for price-fixing, Weisman is clearly a necessary or at least a proper party. Therefore, 10 Del. Code § 3114 applies to Weisman, and the District Court in Delaware has personal jurisdiction over Weisman.

■ Finally, Weisman argues that 10 Del. Code § 3114 is unconstitutional as applied to him. However, this Court has found the statute constitutional on its face because it bases jurisdiction on minimum contacts, namely defendant's acceptance of a directorship of a Delaware corporation. Weisman has accepted sole directorships in two Delaware corporations, and has the necessary minimum contacts. The statute is constitutional as applied to him.

### 3. District of Columbia

Plaintiff District of Columbia claims personal jurisdiction over Weisman in the District of Columbia on the basis of two sections of the District of Columbia long arm statute, D.C. Code §§ 13–423(a)(1) and (4).[6]

---

5. Weisman cites language in *Hana Ranch v. Lent*, 424 A.2d 28, 31 (Ch.Del.1980), to support his contention that 10 Del. Code § 3314 does not apply when a director is alleged to have done something a non-director could also have done. However, Weisman has misinterpreted *Hana Ranch*. In that case, plaintiffs sought relief declaring that a proposed stock conversion plan was fair and equitable. Plaintiffs sought to have defendant, who was both a director and a common stockholder, declared a representative of the class of common shareholders who objected to the plan. The court found no personal jurisdiction under 10 Del. Code § 3114 because, although defendant happened to be a director, his action in opposing the plan was taken in his capacity as a common stockholder. This does not mean that if defendant, as a director, had taken an action which a common stockholder could also have

taken, defendant would not have been subject to 10 Del. Code § 3114.

6. The long arm statute reads as follows:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

\* \* \* \* \* \*

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

D.C. Code § 13–423.

Plaintiff relies first upon D.C. Code § 13–423(a)(1), which provides for personal jurisdiction over individuals who transact business in the District of Columbia. Plaintiff alleges that Weisman lived at the Hotel Madison in Washington from late spring until December, 1979, a period during which the alleged price-fixing conspiracy took place. During this time, Weisman was in charge of MAT operations and conducted that business in part, from the Madison Hotel. He also met with business associates at the hotel upon occasion.

■ D.C. Code § 13–423(a) is limited by § 13–423(b), which provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." As the District of Columbia Circuit recently stated, "[t]he District of Columbia courts have interpreted section 423(b) as a bar to claims unrelated to the acts forming the basis for personal jurisdiction." *Willis v. Willis*, 655 F.2d 1333 (D.C.Cir.1981). Plaintiff alleges only that Weisman "conducted his [MAT] business" in the District for a period during which the price-fixing conspiracy is also alleged to have occurred. Governmental Plaintiffs' Supplemental Response on Issues of Jurisdiction and Venue at 16. Plaintiff does not allege that Weisman performed any act directly related to the price-fixing conspiracy in the District of Columbia. Plaintiff's claim based upon an alleged violation of the antitrust laws does not "aris[e] from" the conduct of normal MAT business. The mere coincidence in time of the alleged price-fixing conspiracy and Weisman's conduct of MAT business in the District of Columbia does not mean that the former arose from the later. Therefore, § 13–423(a)(1) cannot serve as a basis for personal jurisdiction over Weisman.

■ Plaintiff also argues that there is personal jurisdiction over Weisman in the District of Columbia based on § 13–423(a)(4), which provides for personal jurisdiction over an individual who causes tortious injury to District residents by acts outside the District while engaged in a persistent course of conduct in the District. Weisman acknowledges that his activities in the District of Columbia may be fairly characterized as a "persistent course of conduct." However, he argues correctly that there has been no tortious injury in the District of Columbia. The place of injury from a price-fixing conspiracy is the place of sale, since the consumer is injured at the time he pays for artificially inflated price. *Hitt v. Nissan Motor Co., Ltd.*, 399 F.Supp. 838, 847 (S.D.Fla.1975). No Toyotas were sold in the District of Columbia and no tortious injury occurred there. The fact that District residents may have bought Toyotas in neighboring states and brought them to the District is irrelevant. The Supreme Court has rejected, as not satisfying the Due Process requirement of minimum contacts, the idea that one who sells a product in one forum is subject to jurisdiction in another forum, whose only connection with the seller is that a purchaser transported the product into the forum and suffered an injury there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296–98, 100 S.Ct. 559, 566–68, 62 L.Ed.2d 490 (1980). This is true even if it is foreseeable that the purchaser will transport the product into the other forum. *Id.* at 296, 100 S.Ct. at 566. Therefore, the District of Columbia cannot obtain personal jurisdiction over Weisman on the basis of D.C. Code § 13–423(a)(4).

### 4. Pennsylvania

■ The Pennsylvania long arm statute provides for personal jurisdiction over a person who causes "harm or tortious injury by an act or omission in this Commonwealth" or who causes "harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa.C.S.A. § 5322(a)(3) & (4). Weisman allegedly participated in a series of meetings, two of which took place in Pennsylvania, in furtherance of the price-fixing conspiracy. Also, the alleged conspiracy resulted in tortious injury in Pennsylvania, because Toyotas were sold in Pennsylvania. Therefore, Pennsylvania has personal jurisdiction over

Weisman under both sections of the long arm statute, because his acts (meetings) in the state allegedly caused tortious injury and his acts outside the state (the meetings in other states) allegedly caused tortious injury in Pennsylvania. *See, supra*, section I. A. 4.

### 5. *Piercing the Corporate Veil*

All plaintiff states argue for personal jurisdiction over Weisman based on the activities of his corporations, MAT and Carecraft in each of the states, on the theory that Weisman's substantial control over those corporations justifies the court in piercing the corporate veil.[7] Plaintiffs cite the following facts: Weisman is president and sole-director of MAT and Carecraft; MAT and Carecraft are wholly owned subsidiaries of Frederick Weisman Co.; Weisman and his wife own all of the voting stock and 75 percent of the non-voting stock of Frederick Weisman Co.; Frederick Weisman Co. owns the stock of Rare Properties, a company that is a general partner in a limited partnership, Century Industrial Concern, which leases MAT's principal offices to MAT; and, the limited partners of Century Industrial Concern are Weisman, his wife, daughter-in-law, and cousin, Weisman's attorney, two employees of Frederick Weisman Co., and a corporation owned by Weisman's son.

▉▉▉▉ The power to pierce the corporate veil is to be exercised with caution. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976). "[T]he corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Plaintiffs have the burden of proof, *DeWitt, supra*, 540 F.2d at 683, but they argue only that the Court should infer Weisman's total control of MAT and the Carecraft from the fact that he owns most of the corporation's stock. However, it is well settled that, "the

mere fact that all or almost all of the corporate stock is owned by one individual or a few individuals, will not afford sufficient grounds for disregarding corporateness," in the absence of other factors clearly indicating an abuse of the corporate form. *Id.* at 685. The Fourth Circuit has identified eight factors to be considered in determining whether or not to pierce the corporate veil: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; (8) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *Id.* at 685–7. Inasmuch as plaintiffs have alleged no facts relevant to any of these factors, the Court must conclude that there is no basis for piercing the corporate veil to obtain jurisdiction over Weisman in any of the plaintiff states.

### B. JURISDICTION OVER MAT AND CARECRAFT IN THE DISTRICT OF COLUMBIA.

▉▉▉▉ Plaintiff District of Columbia contends that MAT and Carecraft are subject to personal jurisdiction in the District of Columbia under D.C. Code §§ 13–423(a)(1) and (4).[8] For the reasons expressed in section I. A. 3, the Court finds that no tortious injury occurred in the District of Columbia, providing no basis in D.C. Code § 13–423(a)(4) for personal jurisdiction over any defendant.

Plaintiff, relying heavily on *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty., Ltd.*, 647 F.2d 200 (D.C. Cir.1981) (hereinafter *Kaiser*), also argues that MAT and Carecraft have "transacted business" in the District and are therefore subject to personal jurisdiction under the D.C. Code § 13–423(a)(1). In *Kaiser*, a trademark infringement action, defendants,

---

**7.** This is the only alleged basis for jurisdiction over Weisman in West Virginia.

**8.** For the text of these sections, *see, supra* at n.6.

Australian wine producers, had given a New York importer exclusive rights to sell their wine in the East Coast region, including the District of Columbia. Although defendants never personally entered the District to transact business, the New York importers sold cases of wine to a District of Columbia retailer on several occasions over a span of several years. The court held that defendants had in fact transacted business in the District and were thus subject to personal jurisdiction in the District under D.C. Code § 13–423(a)(1). Plaintiff relies on the following sentence in *Kaiser*:

> We are convinced that when the 'transacting any business' language is read to extend to the limits of due process, it encompasses a case like the present one where a non-resident defendant ships goods to an intermediary with the expectation that the intermediary will distribute the goods in a region that includes the District of Columbia.

*Id.* at 205.

This sentence would appear to indicate, as plaintiff argues, that MAT and Carecraft are subject to personal jurisdiction in the District of Columbia, since they distributed products, Toyotas and polyglycoat finishes, respectively, to dealers with the expectation that the dealers would distribute the goods in a region that included the District. However, plaintiff's reliance upon the single conclusory sentence in *Kaiser* distorts the basis of the holding. The court went on to say that:

> As a consequence of their access to district consumers *and the placement of their wine on a local retailer's shelf*, Kaiser and Barossa may invoke 'the benefits and protection[s]' of local law. [citation omitted].

*Id.* (emphasis added). Clearly, the fact that defendants' product was actually sold in the District was of critical importance. If defendants' product had not been sold in the District, plaintiff would have been unable to invoke the District of Columbia law protecting trademarks against infringement. What the court meant by the very general language plaintiff relies upon was that an individual is subject to personal jurisdiction in the District of Columbia when he sets in motion a chain of events that ultimately leads to sales of his product in the District.[9]

This is precisely the reasoning of the Supreme Court in another case plaintiff relies upon, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In discussing the issue of a corporation availing itself of the protection of a forum's law, the Court stated:

> [i]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but *arises from the efforts of the manufacturer or distributor to serve*, directly or indirectly, *the market for its product in other States*, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* at 297, 100 S.Ct. at 567. It is clear that the Court meant sales within the forum, since the Court went on to say that, even though it was forseeable that purchasers of defendant's cars in New York might take them to Oklahoma, such unilateral action by a plaintiff did not satisfy the requirement of minimum contacts between the defendant and the forum. *Id.* at 298, 100 S.Ct. at 567.

The point is that *World-Wide Volkswagen* and *Kaiser* must be read in light of the Due Process requirement of minimum contacts. Regardless of a seller's expectations that his product will end up in a particular forum, and regardless of the plans he implements to bring that about, if his product is never sold in that forum, he has had no contact with it and it would be unreasonable to subject him to suit there

---

**9.** This interpretation is evident in the court's other conclusory sentence:

> In sum, we conclude that the Australian defendants, as foreign producers who anticipate *and seek sales of their goods in a market that includes the District of Columbia*, transacts business here within the meaning of D.C. Code § 13–423(a)(1) (1973). . . .
> *Kaiser, supra*, 647 F.2d at 205 (emphasis added).

for an injury caused by his product. MAT and Carecraft no doubt expected that the distribution network they were involved in would produce sales of Toyotas to District of Columbia residents. However, no dealer ever sold a Toyota *in* the District, so neither MAT or Carecraft had any contact with the District, even under *Kaiser's* broad definition "transacting business." Therefore, D.C. Code § 13–423(a)(1) cannot serve as a basis for personal jurisdiction over MAT and Carecraft.

## C. JURISDICTION IN THE DISTRICT OF COLUMBIA OVER VIRGINIA TOYOTA DEALERS.

■ The Court finds no basis in the District of Columbia long arm statute for jurisdiction over the six Virginia Toyota dealers. *Kaiser* does not apply to them, since they do not transact business indirectly, but rather sell directly to the ultimate consumers. Therefore, these dealers can be deemed to have "transacted business" in the District of Columbia, under D.C. Code § 13–423(a)(1), only if they have sold Toyotas in the District. They have not, and there is no basis for jurisdiction under this section. Again, because no sales were made in the District, no tortious injury occurred there, and there is no basis for jurisdiction under D.C. Code § 13–423(a)(4). *See, supra,* section I. A. 3.

## D. JURISDICTION OVER CARECRAFT IN WEST VIRGINIA

Carecraft contends it has had no contact with West Virginia. Carecraft is in the business of applying protective finishes to cars on dealers' premises in Pennsylvania, Maryland, and Delaware, and other states. In 1979, Carecraft's West Virginia volume was $16.00. Since then it has not sold its protective finishes to Toyota dealers in West Virginia, nor has it applied finishes there. It has no offices, agents, or records in West Virginia, and does not solicit business there.

Plaintiff West Virginia does not challenge these facts. Instead, it argues that, regardless of the extent of the contacts between defendant and the state, there is personal jurisdiction in West Virginia over Carecraft because that corporation consented to personal jurisdiction when it registered to do business in West Virginia under W.Va.Code § 31–1–15. This section provides in relevant part that

[t]he Secretary of State is hereby constituted the attorney-in-fact for and on behalf of every corporation created by virtue of the laws of this state and every foreign corporation authorized to conduct affairs or do or transact business herein pursuant to the provisions of this article, with authority to accept service of notice and process on behalf of every such corporation and upon whom service of notice and process may be made in this state for and upon every corporation appointing the Secretary of State such attorney-in-fact shall be necessary.

For the proposition that consent alone is a sufficient basis for personal jurisdiction, plaintiff cites *Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co.*, 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917). However, plaintiff's reliance is misplaced. In that case, defendant corporation appointed a state officer as the corporation's agent for the service of process, pursuant to the statute requiring foreign corporations to register to do business in Missouri. The Court held that this consent was sufficient basis for jurisdiction over defendant even though the cause of action arose outside Missouri. However, the Court did not hold that consent was a sufficient basis for jurisdiction in the absence of *any* contact between defendant and Missouri. In fact, the statute clearly required some contact with the state, providing that a foreign insurance company must file with the superintendent of the insurance department "a power of attorney consenting that service of process upon the superintendent be deemed personal service upon the company *so long as it should have any liabilities outstanding in the state.*" *Id.* at 94, 37 S.Ct. at 345 (emphasis added.)

In two of the other three cases plaintiff cites, *Billings v. Investment Trust of Bos-*

ton, 309 F.2d 681 (8th Cir. 1962), and *Vogel v. Tenneco Oil Co.*, 276 F.Supp. 1008 (D.C.C. 1967), although the court speaks of consent as being sufficient, the facts reveal actual contacts between the defendant and the forum held to have personal jurisdiction. Plaintiff cites only one case in which the court held consent to be sufficient basis for jurisdiction without any contact between defendant and the forum. *Anderson v. United States*, 220 F.Supp. 769 (E.D.Pa. 1963). In that case, defendant corporation, in order to bid on a project, obtained a permit to do business in Pennsylvania and designated an agent for the service of process. The bid was unsuccessful, and defendant had no further contact with Pennsylvania. Twelve years later, plaintiff sued defendant in Pennsylvania for a cause of action arising in Maryland. The court found personal jurisdiction over defendant in Pennsylvania based on defendant's consent to jurisdiction. It is the view of this Court that under those facts, requiring defendant to defend the suit in Pennsylvania was not "reasonable and just according to our traditional conception of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945), and declines to follow the reasoning in *Anderson.*

 When a corporation, as part of its registration to do business in a state, consents to jurisdiction, that consent is part of a bargain, by which the corporation agrees to accept certain obligations in return for the right to do business in the state. *Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165, 175, 60 S.Ct. 153, 158, 84 L.Ed. 167 (1939). Consent by itself is meaningless—it is significant only as a manifestation of the corporation's recognition that it has availed itself of "the benefits and protections of the laws" of the forum by virtue of conducting business activities there. *See International Shoe, supra*, 326 U.S. at 319, 66 S.Ct. at 160. If the corporation conducts no business in the forum, it has not availed itself of "benefits and protections of the laws" of the forum and there is no bargain between the corporation and the forum state and there is no meaning to the corporation's consent to jurisdiction. In such a situation, it would not be "reasonable and just, according to our traditional conception of fair play and substantial justice" to subject the corporation to jurisdiction in that forum. In short, a consent statute such as W.Va. Code § 31–1–15 necessarily incorporates the Due Process "minimum contacts" requirement.[10] *Schreiber v. Allis-Chalmers Corp.*, 448 F.Supp. 1079, 1090 (D.Kan.1978), *rev'd on other grounds*, 611 F.2d 790 (10th Cir. 1979). With no contact with West Virginia since an insignificant, isolated sale in 1979, Carecraft's consent to jurisdiction is an insufficient basis for personal jurisdiction over it in West Virginia.

## II. VENUE OVER WEISMAN IN DELAWARE

██ Because the District Court in Delaware has personal jurisdiction over Weisman, it is necessary to address Weisman's

---

10. There is no reason to believe that the consent statutes were ever intended to provide jurisdiction over a defendant corporation that had no contact with the forum. First, it is likely that the states which passed such laws did not consider the possibility that a corporation would register to do business in a state and then never enter the state. Secondly, there was a much more fundamental reason for passing a consent statute, as the court observed in *Schreiber v. Allis-Chalmers Corp.*, 448 F.Supp. 1079, 1089–90 (D.Kan.1978), *rev'd on other grounds*, 611 F.2d 790 (10th Cir. 1979). When jurisdictional analysis revolved around *Pennoyer v. Neff*, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877), which required that process be served within the forum's territory, consent statutes were necessary to ensure that a forum could get jurisdiction over foreign corporations for acts within the forum. *Schreiber, supra*, at 1089–90. With the advent of long arm statutes, consent statutes are no longer necessary to secure this basic personal jurisdiction over foreign corporations. Thus, consent statutes are largely obsolete and serve only to confuse matters in unusual cases such as the instant one, where a corporation's only contact with a state is its act of registering to do business there.

contention that venue is improper to Delaware.

The *parens patriae* amendment to the antitrust laws provides that

[a]ny Attorney General of a State may bring a civil action in the name of such state, as parens patriae on behalf of natural persons residing in such state, *in any district court of the United States having jurisdiction of the defendant.* . . .

15 U.S.C. § 15c(a)(1) (emphasis added). This section is intended to provide universal venue in *parens patriae* suits. The best evidence of this is that Congress deliberately omitted language limiting venue. Section 15 of U.S.C. Title 15 in the original act provides for suits by persons injured as a result of a violation of the antitrust laws. Section 15c is simply a recasting to allow suits by state Attorneys General on behalf of individuals. Both sections allow treble damages and explain how the court should calculate interest. The original section 15 provides that a person may sue "in any district court of the United States in the district in which the defendant resides or is found to have an agent." When Congress drafted section 15c, they did not carry over this qualifying language but rather provided that a state Attorney General may bring suit "in any district court having jurisdiction of the defendant." Given the other similarities between the two sections, this change was clearly deliberate and evinces an intent to eliminate venue requirements in *parens patriae* actions. This interpretation is in keeping with the purposes of the *parens patriae* amendments, which was to make it easier for consumers to recover damages for violations of the antitrust laws. S.Rep.No.1284, 94th Cong.2d Session (1976) at 39, U.S.Code Cong. & Admin.News 1976, p. 2572.

This interpretation is also supported by language in the Senate Committee Report regarding the venue provisions of the *parens patriae* amendment. The Committee stated that the provision in Section 15c for suits in the "appropriate federal District Court. . . automatically sweeps up, but is not limited to, the venue and service provisions of the present Clayton Act (*See* 15 U.S.C. § 22)." *Id.* at 43. This is significant because when 15 U.S.C. § 22[11] was passed, it liberalized the general venue statutes, which allowed suits against a corporation only in its place of incorporation. 15 Wright & Miller, Cooper, Fed. Practice and Procedure, § 3818 at 108. This liberalization of the venue provisions in antitrust actions has been recognized by a number of courts. *See, e. g., United States v. Scophony Corp. of America*, 333 U.S. 795, 808, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948). The Committee's statement that the venue provisions of Section 15c was a further liberalization of the antitrust venue provisions is consistent with the interpretation of Section 15c as providing for universal venue.

## III. MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants Weisman and Carecraft as well as some of the dealer defendants in Maryland and Pennsylvania have moved to dismiss the complaints for failure to state a claim upon which relief can be granted. In addition, some of the Pennsylvania defendants along with Weisman, Carecraft and MAT moved to dismiss the Pennsylvania complaint for failure to state a claim for tying.[12] Some of the Pennsylvania defendants have moved to dismiss because damages are not available to the state under 15 U.S.C. § 15c-h for alleged violations of § 3 of the Clayton Act, 15 U.S.C. § 14. Since the claims relating to the Pennsylvania complaint are more extensive than those relating to the other state complaints, the Court will discuss the state complaints separately.

---

11. 15 U.S.C. § 22 provides for venue, in a suit against a corporation,

not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business. . . .

12. The Pennsylvania complaint is the only state complaint that alleges tying. Pennsylvania Complaint, ¶ 20.

## A. MARYLAND, DELAWARE AND WEST VIRGINIA COMPLAINTS [13]

■ The reasoning in *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), requires that defendants' motion to dismiss be denied. There, the Supreme Court relied on earlier cases to issue the mandate that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 746, 96 S.Ct. at 1853, *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The Court also indicated that dismissals in antitrust cases should be granted very sparingly because the proof of conspiracy is largely in the hands of the alleged conspirators and the plaintiffs should be given ample opportunity to conduct the necessary discovery. *Hospital Building Co.*, 425 U.S. at 746, 96 S.Ct. at 1853; *citing Poller v. Columbia Broadcasting*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). *See also Burch v. Goodyear Tire & Rubber Co.*, 420 F.Supp. 82 (D.Md.1976), *aff'd*, 554 F.2d 633 (4th Cir. 1977); *Knuth v. Erie-Crawford Dairy Cooperative Association*, 395 F.2d 420 (3d Cir. 1968), *cert. denied*, 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973).

Defendant Carecraft claims that the complaints fail to allege that it had anything to do with the price-fixing agreement. Weisman argues that the complaints fail to allege that he was a party to the illegal agreements, claiming that all of his alleged activities were lawful. The dealer defendants in the Maryland case have filed the bare motions to dismiss with no supporting memoranda.

The Governmental Plaintiffs' complaints clearly identify the defendants. Mid-Atlantic Toyota (MAT) is identified as a corporation incorporated under the laws of Delaware with its principal place of business in Maryland, whose business during the operative period of the complaint was buying Toyota vehicles, parts and accessories from the manufacturer and reselling those items to authorized Toyota dealers in the Mid-Atlantic Region. (Delaware and Maryland complaints, ¶ 5, West Virginia complaint, ¶ 6). Carecraft, identified as a Delaware corporation whose principal place of business is in Maryland, was the port handling agent for MAT. (¶ 7 of Maryland and Delaware complaints, ¶ 8 of West Virginia complaint). In that capacity, the complaints allege, Carecraft, then operating as "Crown Atlantic Corporation," prepared the vehicles for sale to Toyota dealers by applying "distributor installed" accessories including protective packages. *Id.* The protective package is defined as items including polyglycoat finish, rust proofing, sound proofing, interior protection, and motor club membership. (Maryland and Delaware complaints, ¶ 3, West Virginia complaint, ¶ 4(b)).

The complaints identify Frederick R. Weisman as President, Principal Operating Officer and sole director of MAT, and Chief Executive Officer and sole director of Crown Atlantic Corporation at the time covered by the complaint. (Maryland and Delaware Complaints, ¶ 6, West Virginia complaint, ¶ 7). The complaints then list the dealer defendants and their principal places of business, and make the requisite allegations of impact on interstate commerce by identifying the means by which the cars enter the United States through the port of Baltimore, are prepared with the protective packages by Carecraft, and then distributed interstate for resale by the defendant dealers and other Toyota dealers. The interstate nexus comes from purchasers coming from states other than the state where the Toyota dealer selling the vehicle is located, or purchases financed by institutions outside the state where the sale is completed.

---

**13.** Since the District of Columbia complaint must be dismissed as to Weisman, Carecraft, and some of the dealers, on jurisdictional grounds, the only viable motions for failure to state a claim are in Maryland, Delaware, Pennsylvania and West Virginia.

The "violation" section of each complaint charges "defendants" (previously identified) and "their co-conspirators" with having "continuously engaged in an unlawful contract, combination or conspiracy" in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, beginning at a date unknown up until the filing of the complaint. (Delaware complaint, ¶ 18, Maryland complaint, ¶ 16, West Virginia complaint, ¶ 17). The complaints further charge "defendants and their co-conspirators" with "a continuing agreement, understanding or concert of action" to fix prices of Toyota vehicles by having the protective package applied. (Delaware complaint, ¶ 19, Maryland complaint, ¶ 17, West Virginia complaint, ¶ 18).

The next paragraph in each complaint sets out acts which the defendants are alleged to have committed in furtherance of the conspiracy. The complaints charge that MAT, at Weisman's direction, arranged a series of meetings with the Toyota dealers in the Mid-Atlantic Region to discuss the effect of the application of the protective packages on the retail prices of Toyota cars.[14] The complaints further allege that Weisman encouraged the dealers to order the protective package from Carecraft and that the dealers agreed with MAT and each other to do so.

The complaints then allege that the effect of these actions by defendants was to fix, raise or maintain at artificial and non-competitive levels the prices for new Toyota automobiles; to restrain price competition among authorized Toyota dealers; and to deny the benefits of free and open competition among Toyota dealers to natural persons resident in the Mid-Atlantic Region. (Delaware complaint, ¶ 22, Maryland complaint, ¶ 20, West Virginia complaint, ¶¶ 21–23).[15] Finally, the complaints allege injury to natural persons residing within the respective states.

In light of the principles of pleading espoused in *Hospital Building Co., supra,* the governmental plaintiffs' complaint gives a sufficiently clear description of the alleged conspiracy and enough details as to time and place to give all the defendants notice of the basis of the claim against them.[16] Under Rule 8, F.R.Civ.P., that is sufficient to survive a motion to dismiss under Rule 12(b)(6). *National Constructors v. National Electrical Contractors,* 498 F.Supp. 510, 528 (D.Md.1980). The motion to dismiss the Delaware, Maryland and West Virginia complaints must be denied as to all defendants.

## B. PENNSYLVANIA COMPLAINT

The Pennsylvania complaint is virtually identical to the other complaints in the particulars necessary to survive the motion to dismiss for failure to state a claim on which relief may be granted. That motion will be denied for the reasons stated in the discussion above.

The Pennsylvania complaint differs from the other state complaints, however, in that jurisdiction in Pennsylvania is not based solely on 15 U.S.C. § 15c (the *parens patriae* section) for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Pennsylvania also claims damages through its Attorney General for injuries sustained by natural persons resident in Pennsylvania, for violations of Section 3 of the Clayton Act, 15 U.S.C. § 14. (¶ 1). The Pennsylvania complaint also states a cause of action for tying

---

**14.** The Maryland and West Virginia complaints set out two dates on which such meetings allegedly took place. All three governmental complaints mention specific places of those meetings.

**15.** The Delaware complaint also charges at ¶ 22 that competition among Toyota dealers in the business of selling the protective packages was restrained.

**16.** Some of the dealer-defendants also argue that because they were not in existence at the time of the formation of the conspiracy, they may not be held liable for the conspiracy. The law is that a co-conspirator "who joins a conspiracy with knowledge of what has gone on before and with an intent to pursue the same objectives, may, in the antitrust context, be charged with the preceding acts of its co-conspirators." *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549 (7th Cir. 1980). *Accord, Industrial Building Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336 (9th Cir. 1970).

arrangements in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14, alleging that the new Toyota vehicles are the "tying" product and the protective package is the "tied" product. (¶ 20). The effect of this tying arrangement is alleged to be a restraint of competition "between the defendants and independent owners of rustproofing, polyglycoating, or similar protective processes." (¶ 21(c)).

 The above discussion of the principles of notice pleading applies equally to the defendants' claim that the Pennsylvania complaint fails to state a claim for tying. A cause of action for tying can be brought under § 1 of the Sherman Act, 15 U.S.C. § 1, whether the tied product is a commodity or a service. *Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *Advance Business Systems & Supply Co. v. SCM Corp.*, 287 F.Supp. 143 (D.Md.1968), *aff'd and remanded on other grounds*, 415 F.2d 55 (4th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970). The complaint puts the defendants on notice of the claim for tying,[17] and is properly brought by the state as *parens patriae* under 15 U.S.C. § 15c.

Moreover, the Commonwealth of Pennsylvania may sue as *parens patriae* for injunctive relief against injury to its economy under Section 16 of the Clayton Act, 15 U.S.C. § 26, for violations of Section 3 of the Clayton Act, 15 U.S.C. § 14. *Georgia v. Pennsylvania Railroad*, 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945); *Burch v.*

*Goodyear Tire & Rubber Co.*, 554 F.2d 633 (4th Cir. 1977). To the extent that the Commonwealth's complaint asserts a claim for damages under Section 3 of the Clayton Act, 15 U.S.C. § 14, however, it must be dismissed.

## IV. FAILURE TO COMPLY WITH RULE 11, F.R.CIV.P.

 Some of the Pennsylvania dealers have moved to dismiss the complaint for failure to comply with Rule 11[18] and have requested that the court assess attorneys' fees and costs pursuant to Rule 11 and 15 U.S.C. § 15c(d)(2). The gravamen of these motions is that Rule 11 requires a pleading to be signed by an attorney and that the signature certifies that there is good ground to support the pleading. This means that the attorney is required to conduct an investigation prior to signing so that the attorney can, in good faith certify that there are grounds to support the pleading. *Rhinehart v. Stauffer*, 638 F.2d 1169 (9th Cir. 1979). However, a pleading should be stricken or dismissed "only when it appears beyond peradventure that it is sham and false and that its allegations are devoid of factual basis; otherwise it would deprive a party of his right to a trial of the issues posed by his complaint." *Murchison v. Kirby*, 27 F.R.D. 14 (S.D.N.Y.1961). *Accord, Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. 1184 (D.Md.1977); *Cornaglia v. Ricciardi*, 63 F.R.D. 416 (E.D.Pa.1974).

 Movants have based their claims that the Pennsylvania complaint be stricken

---

17. As plaintiff Pennsylvania points out in its brief, the complaint has served its purpose in this case. The defendants have set out in their briefs the various elements which they say are necessary to prove the tie-in claim. Defendants' reading of the cases they cited confuses sufficiency of proof with sufficiency of the allegations in a complaint. Whether or not plaintiffs will be able to prove the tie-in claim at trial, the allegations of the complaint are sufficient to withstand a motion to dismiss.

18. Rule 11 provides in pertinent part:
SIGNING OF PLEADINGS
Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name,

whose address shall be stated. . . . The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.

as sham and false on assertions that they were not in existence as dealerships at the time of the alleged meetings which originated the alleged conspiracy. Movants have failed to note that the complaint charges a continuing conspiracy, reaching to the time of filing the complaint on March 10, 1981. (Pennsylvania complaint, ¶ 16). Even though some Toyota dealerships did not come into existence until after the initial meetings, this does not mean that they are not liable for the conspiracy. *See* note 16, *supra.*

■ In response to the Rule 11 motions, the Commonwealth offered to present what it believes to be privileged information to the Court in an *in camera* proceeding. In lieu of the hearing, the Court requested that an attorney for the Commonwealth provide an affidavit setting forth the grounds for the complaint. According to the affidavit of Carl S. Hisiro, Deputy Attorney General for the Commonwealth of Pennsylvania, the investigation conducted before the filing of the complaint was intensive. Several attorneys, secretaries, investigators and police officers were employed to investigate the operations of the Toyota dealerships. The affidavit states that the investigation revealed that dealerships created after the 1979 meetings were given the protective package agreement to

sign. Hisiro Affidavit, ¶ 7. The affirmation of the Deputy Attorney General at paragraph nine (9) of his affidavit, that he believes "to the best of my knowledge and information, at the time I signed the Complaint that there was good ground to support the allegations," is sufficient to withstand the Rule 11 motions. *Murchison v. Kirby, supra*, 27 F.R.D. at 19. *Accord, Child v. Beame*, 412 F.Supp. 593, 600 (S.D. N.Y.1976).

## V. CONSTITUTIONALITY OF THE HART–SCOTT–RODINO ANTITRUST IMPROVEMENTS ACT OF 1976, TITLE III, 15 U.S.C. §§ 15c–h

Defendants have moved to dismiss the five (5) *parens patriae* complaints on the ground that the statute purporting to authorize such actions, the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the Act), 15 U.S.C. §§ 15c–h (1981) is unconstitutional. Defendants' constitutional arguments, of which there are several, are directed at the interplay of three sections of the Act.[19] Defendants claim that the *parens* provisions are unconstitutional[20] because they violate the "case or controversy" requirement of Article III, the Due Process Clause and the Just Compensation Clause of the Fifth Amendment, the jury trial guarantee of the Seventh Amendment, the Ap-

---

**19.** The three sections of Title 15 of the United States Code involved are:

Section 15c(a)(1), which authorizes the prosecution of *parens* actions in certain antitrust scenarios:

[any] attorney general of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State, in any district court of the United States having jurisdiction of the defendant, to secure monetary relief . . . for injury sustained by such natural persons to their property by reason of any violation of Sections 1 to 7 of this title.

Section 15d involves alleged price-fixing schemes allegedly similar to those involved here, and provides that:

In any action . . . in which there has been a determination that a defendant agreed to fix prices in violation of sections 1 to 7 of this title, damages may be proved and assessed in the aggregate by statistical or sampling methods, . . . without the necessity of separately proving the individual claim of, or

amount of damage to, persons on whose behalf the suit was brought.

Section 15e provides that:

[m]onetary relief recovered in an action under section 15c(a)(1) of this title shall—

(1) be distributed in such manner as the district court in its discretion may authorize; or

(2) be deemed a civil penalty by the court and deposited with the State as general revenues;

subject in either case to the requirement that any distribution procedure adopted afford each person a reasonable opportunity to secure his appropriate portion of the net monetary relief.

**20.** Defendants claim that the Act is unconstitutional as applied, but since defendants fail to assert any facts differentiating this litigation from any other brought pursuant to the *parens* sections, the Court will treat this as a challenge to the facial validity of the Act.

pointments Clause of Article II, and the principles of federalism. This Court is not persuaded by the myriad arguments propounded by defendants and finds the Act constitutionally sound.

## A. CASE OR CONTROVERSY

The defendants contend that the scheme devised by these three sections fails to meet the minimum requirement of Article III of the Constitution which requires that there be a "case or controversy." *Citing Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), defendants claim that plaintiffs' "personal stake in the outcome" is missing [21] and that the Act allows the state to recover a speculative sum of damages and requires defendants to forfeit estimated sums that may or may not be used to compensate the alleged victims of price fixing. Defendants posit that this virtual disassociation of the alleged injured persons with the cause of action violates the "case or controversy" limitation.

In terms of Article III limitations on federal court jurisdiction, the controlling law states that, "the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968).

The dispute in the instant case is presented in the necessary adversary context because the plaintiffs must prove the injury sustained by the natural persons by reason of a violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (in the District of Columbia, 15 U.S.C. § 3), in order to prevail upon the cause of action. 15 U.S.C. § 15c(a)(1). The *parens patriae* action is merely a new procedural device to enforce existing rights of recovery that the individuals have under Section 4 of the Clayton Act, 15 U.S.C. § 15. *Illinois Brick Co. v. Illinois*, 431 U.S. 720,

734, n.14, 97 S.Ct. 2061, 2068, n.14, 52 L.Ed.2d 707 (1977). Congress has legislated a "stand-in" to manage the litigation for the individuals who cannot afford to pursue the existing remedy. The underlying case or controversy still exists and it is now carried on in a representative capacity by the state attorney general designated as a "guardian or trustee." *In re Montgomery County Real Estate Antitrust Litigation*, 452 F.Supp. 54 (D.Md.1978); *Proceedings in Petroleum Products Antitrust Litigation*, 1978-1 TRADE CAS. ¶ 61,839 (C.D.Cal. 1978).

The Supreme Court recognizes representational standing as a rule of practice, not a constitutional imperative. *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). Hence, Congress may grant standing to those who would otherwise be barred. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *National Motor Freight Traffic Association, Inc. v. United States*, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). Thus, even though the states allege no injury to themselves, they can establish standing as representatives of their residents who have been injured in fact and could have brought suit in their own right. *See Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The *parens patriae* provisions comport with recognized Article III standing requirements.

## B. DUE PROCESS AND RIGHT TO A JURY TRIAL

Defendants next argue that the damage provisions of section 4D, 15 U.S.C. § 15d, violate the Due Process clause of the Fifth Amendment and the right to a jury trial established by the Seventh Amendment. These contentions involve the same issues

---

21. The answer that the states' personal stake in the outcome comes from the possibility that the Court pursuant to 15 U.S.C. § 15e(2) may deem the uncollected monies a civil penalty to escheat to the state runs afoul of defendants further argument, discussed *infra*, that the distribution section violates the Article II Appointments Clause and the Just Compensation Clause of the Fifth Amendment.

concerning governmental plaintiffs' proof at trial and defendants' opportunity to contest the proof, and will be discussed together.

Although the contentions as to the unconstitutionality of this section as applied is premature because plaintiffs have not clarified their method of proving damages, the Court will construe the damage provision to conform to constitutional requirements so that discovery may proceed. *See Califano v. Yamasaki*, 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979).

█ Contrary to defendants' contentions, the measure of damage provision does not *require* the "fluid recovery" concept discredited in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Section 4C of the Act, 15 U.S.C. 15c, allows a state attorney general to bring an action for "injury sustained by such natural persons to their property by reason of any violation of Sections 1 to 7 of this title." The plaintiffs must prove a violation of the Antitrust laws and some injury. *Advance Business Systems & Supply Co. v. SCM Corp.*, 415 F.2d 55 (4th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970). It has long been established that once the fact of injury in an antitrust case has been proved, the amount of damages may be established by a "just and reasonable estimate . . . based on relevant data." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946). *See also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (May 18, 1981); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123–25, 89 S.Ct. 1562, 1576–78, 23 L.Ed.2d 129 (1969); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 561–64, 51 S.Ct. 248, 250–51, 75 L.Ed. 544 (1931). *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977), is not to the contrary. There the Fourth Circuit affirmed the denial of class certification because there was no "easy formula" by which individual proof of damages could be avoided.

█ In the instant case there may well be an easy formula. Plaintiffs may be able to prove damages by statistical or sampling methods. As discovery progresses and plaintiffs' methods of proving damages becomes clearer, the Court will be able to rule on the constitutionality of the specific method chosen. For the present, such methods of proof are commonly accepted and constitutionally sound. *See In re Independent Gasoline Antitrust Litigation*, 79 F.R.D. 552, 561–62 (D.Md.1978); *Rosado v. Wyman*, 322 F.Supp. 1173, 1180–81 (E.D.N.Y.), *aff'd*, 437 F.2d 619 (2d Cir. 1970), *aff'd*, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971).

█ If plaintiffs' method is a reasonable estimate based on relevant data, defendants still retain the opportunity of rebutting the method of proving damages, the facts or assumptions upon which the method rests, or the uniformity of application of the price increase. Indeed, the defendants are more likely to have access to records of sales than are plaintiffs. Therefore, it is not a violation of defendants' due process or their right to a jury trial to place the burden on them to prove that purchasers were not injured as much as plaintiffs' statistical method would assume. This is in keeping with the Court's understanding of the Act as a procedural device. The Act allows the recognition of a rebuttable presumption of the measure of damages based on a reasonable estimate of the aggregated damages.

## C. APPOINTMENTS CLAUSE AND JUST COMPENSATION CLAUSE

Finally, defendants challenge the distribution of damages provision, 15 U.S.C. § 15e, as an unconstitutional Congressional appointment of state attorneys general to enforce federal law by collecting a civil penalty to be deposited with the states. This, defendants claim, violates the Appointment Clause of Article II, and to the extent the "damages" recovered are used for purposes other than compensating injured parties, the Just Compensation Clause

of the Fifth Amendment. Defendants also claim this delegation of authority violates the principles of federalism embodied in the Constitution because it imposes a duty on state officers to enforce federal law.

■ The following would have to occur before the alleged unconstitutional delegation becomes effective: (1) a judgment against defendants, (2) failure of some of the injured persons to secure their portion of the net monetary relief, and (3) a decision by the court pursuant to 15 U.S.C. § 15e that the residue be deemed a "civil penalty" and deposited with the states as general revenues. At this point in the litigation, these factors are so speculative that this particular issue does not present a justiciable cause or controversy with which the court is empowered to deal. *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). *See also Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). If and when the alleged "civil penalty" is indeed collected by the states, there will be opportunity for defendants to challenge the effect of that portion of the law.

## VI. AUTHORITY OF THE STATE ATTORNEYS GENERAL TO BRING PARENS ACTIONS

Defendants next contend that the *parens patriae* provisions of the Act do not of themselves authorize state attorneys general to bring these actions, but require an act of authorization from the state.[22] No separate state authorization is called for. The Fourth Circuit made this clear in *United States v. Colonial Chevrolet Corp.*, 629 F.2d 943, 950 (4th Cir. 1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1352, 67 L.Ed.2d 337 (1981), when it declared,

the chief law enforcement officer of a State . . . has been specifically invested, as a matter of federal public policy as

formally expressed in an Act of Congress, with the capacity to maintain a *parens patriae* federal antitrust suit in aid of the small consumer . . . The State Attorney General has been thus explicitly clothed by the Congress with this power and right. . .

■ Defendants argue that the part of the provision which reads, "the term 'State attorney general' means the chief legal officer of a State, or any other person authorized by State law to bring actions under Section 15c of this title," means that the attorneys general of Maryland, Delaware and Pennsylvania must be specifically authorized by the states to bring this action. This argument ignores the basic tenet of statutory construction that qualifying words, phrases, and clauses refer to the word, phrase, or clause immediately preceding, and are not to be construed as extending beyond their first antecedent. *E. g., United States v. Pritchett*, 470 F.2d 455, 458–9 (D.C.Cir.1972). The absence of a comma before the phrase "authorized by State law" shows that the modifying clause was intended to modify only the clause "any other person." *Id.*

■ This Rule of the Last Antecedent applies unless the context indicates otherwise. *Id.* at 459. A fair reading of the Improvements Act indicates that the definition of a state attorney general applies to the plaintiffs in this case. Section 15g must be read in conjunction with 15 U.S.C. § 15h, which provides for the applicability of the Act "unless such State provides by law for its nonapplicability in such State." Clearly, Congress contemplated that the only action necessary for a state to take with regard to this statute was to opt out if it so wished. Since such is not the case with the states involved in this suit the plaintiffs are authorized as a matter of federal law to bring this action.[23]

---

22. Defendants argument is based on 15 U.S.C. § 15g, which defines the term "State attorney general" for purposes of §§ 15c, 15d, 15e, and 15f.

23. Contrary to defendants' argument based on *Ex parte Kentucky v. Dennison*, 65 U.S. (24 How.) 66, 16 L.Ed. 717 (1861), nothing in the Act in any way imposes a *duty* on a state attorney general to bring a *parens* action. The Act merely creates a new procedural device

## VII. SUMMARY

In summary, there is personal jurisdiction over Frederick Weisman in Delaware, Maryland, and Pennsylvania, but there is no personal jurisdiction in the District of Columbia over Weisman, MAT, Carecraft, Lustine Toyota, Inc., Croyste Toyota, Inc., Waldorf Toyota, Inc., Miller Toyota-Volvo, Inc., Bill Page Toyota, Inc., or Springfield Toyota, Inc. Nor is there personal jurisdiction in West Virginia over Weisman or Carecraft. Personal jurisdiction over Carecraft in Maryland, Delaware and Pennsylvania, and over MAT in Maryland, Delaware, Pennsylvania and West Virginia is not contested. The Court also finds that venue is proper in Delaware as to Weisman.[24]

All the governmental complaints are sufficient to withstand the motion to dismiss under Rule 12(b)(6), F.R.Civ.P.[25] The Pennsylvania complaint states a claim for tying, but insofar as the Commonwealth's claim for damages is predicated on Section 3 of the Clayton Act, 15 U.S.C. § 14, it must be dismissed. The Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. §§ 15c-h, is constitutional and the state attorneys general are authorized to bring the *parens patriae* actions as a matter of federal law.

For the above reasons, it is this 14th day of October, 1981, by the United States District Court for the District of Maryland, ORDERED: that

1. Defendant Weisman's motion to dismiss for lack of personal jurisdiction in Maryland, Delaware, and Pennsylvania BE, and the same IS, hereby DENIED;

2. Defendant Weisman's motion to dismiss for lack of personal jurisdiction in the District of Columbia and West Virginia BE, and the same IS, hereby GRANTED;

3. Defendant Weisman's motion to dismiss for improper venue in Delaware BE, and the same IS, hereby DENIED;

4. Defendant Mid-Atlantic Toyota Distributors, Inc.'s motion to dismiss for lack of personal jurisdiction in the District of Columbia BE, and the same IS, hereby GRANTED;

5. Defendant Carecraft's motion to dismiss for lack of personal jurisdiction in the District of Columbia and West Virginia BE, and the same IS, hereby GRANTED;

6. Defendant dealers' motion to dismiss for lack of personal jurisdiction in the District of Columbia BE, and the same IS, hereby GRANTED;

7. The motions to dismiss for failure to state a cause of action (made by Weisman, Carecraft and various dealer defendants) BE, and the same ARE, hereby DENIED;

8. The motions to dismiss the Pennsylvania complaint for failure to state a claim for tying BE, and the same ARE, hereby DENIED;

9. The motions to dismiss the Pennsylvania complaint for failure to state a claim to the extent that it is based on a claim for damages under 15 U.S.C. § 14 BE, and the same ARE, hereby GRANTED;

10. The motions to dismiss the Pennsylvania complaint for failure to state a claim for injunctive relief under 15 U.S.C. § 14 BE, and the same ARE, hereby DENIED;

11. The motions to dismiss the Pennsylvania complaint for failure to state a claim for damages under 15 U.S.C. § 15c BE, and the same ARE, hereby DENIED;

12. The motions to dismiss based on the unconstitutionality of the Hart-Scott-Rodino Antitrust Improvements Act of 1976 BE, and the same ARE, hereby DENIED;

13. The motions to dismiss based on the lack of authority of the state attorneys general to bring a *parens patriae* action under 15 U.S.C. § 15c BE, and the same ARE, hereby DENIED;

---

which a state attorney general *may* use. Congress has the power to create rights of action in particular litigants.

**24.** All other challenges of venue are moot because of lack of personal jurisdiction.

**25.** A motion for summary judgment for failure to state a claim was made by Bill Fry Ford, d/b/a Bill Fry Ford-Toyota and is unopposed by the Commonwealth of Pennsylvania. The motion will be granted.

14. The District of Columbia and West Virginia complaints BE, and the same ARE, hereby DISMISSED WITH RESPECT TO defendant Weisman and defendant Carecraft;

15. The District of Columbia complaint BE, and the same IS, hereby DISMISSED WITH RESPECT TO defendant Mid-Atlantic Toyota Distributors, Inc.;

16. The District of Columbia complaint BE, and the same IS, hereby DISMISSED WITH RESPECT TO Lustine Toyota, Inc., Croyste Toyota, Inc., Waldorf Toyota, Inc., Miller Toyota-Volvo, Inc., Bill Page Toyota, Inc., and Springfield Toyota, Inc.;

17. Defendant Bill Fry Ford, Inc., d/b/a Bill Fry Ford-Toyota's motion for summary judgment BE, and the same IS, hereby GRANTED; and

18. The Pennsylvania dealer defendants' motions to strike and/or to dismiss based on Rule 11 BE, and the same ARE, hereby DENIED.