**E. M. ARMSTRONG et al., Defendants
Below, Appellants,**

v.

**Joseph POMERANCE, Plaintiff
Below, Appellee.**

Supreme Court of Delaware.

Submitted June 5, 1980.

Decided Oct. 29, 1980.

R. Franklin Balotti (argued) of Richards, Layton & Finger, Wilmington, and Charles S. Crompton, Jr. (argued) of Potter, Anderson & Corroon, Wilmington, for defendants below, appellants.

J. A. Rosenthal (argued), and Irving Morris of Morris & Rosenthal, P. A., Wilmington, and Mordecai Rosenfeld, New York City, for plaintiff below, appellee.

Before McNEILLY, QUILLEN and HORSEY, JJ.

McNEILLY, Justice:

This interlocutory appeal involves two consolidated derivative actions brought on behalf of the Morrison–Knudsen Company, Inc. (hereinafter the Company), asserting breach of fiduciary duty by the named individual defendants in their capacities as directors of the Company. The suits allege

misconduct in transactions involving the repurchase of Company stock from the Crane Company.

The Company is a Delaware corporation with its principal place of business in Boise, Idaho. The Company transacts no business in Delaware other than the minimum necessary to maintain its status as a Delaware corporation. None of the individual defendants are Delaware residents, and no board of directors meeting has ever been held in Delaware. The plaintiffs do not allege the defendant–directors have any connection with Delaware other than being directors in a Delaware corporation who have allegedly breached their fiduciary duties to the corporation.

Jurisdiction over the defendants and service of process on them was attempted under 10 *Del.C.* § 3114.[1] After the defendants entered limited appearances to contest jurisdiction, the Court below found personal jurisdiction was properly asserted.[2] The sole issue presented by this appeal is whether the Court of Chancery erred in making that determination. The defendants have raised only constitutional objections to the Court's assertion of jurisdiction.

■ However, the first question we must reach is whether the defendants were served properly under § 3114. One part of that section provides that *serving* in the capacity of director of a Delaware corporation after June 30, 1978, is consent to *in personam* jurisdiction in Delaware in actions relating to the defendant's capacity as director. The summonses in both actions in this appeal were issued prior to June 30, 1978. Therefore, the lower court asserted jurisdiction over the defendants prior to that time. As a result, the jurisdiction of the Court cannot be statutorily based on the fact of the defendants serving as directors.

Section 3114 also provides that accepting election or appointment to a directorship of a Delaware corporation after September 1, 1977, is a consent to jurisdiction in suits relating to the defendant's capacity as director. Jurisdiction in this case must exist, if at all, through that clause of § 3114. Indisputably, at the time service was attempted, defendants Armstrong, McMurren, Stuart, Morrison, Scott, and Spencer had been elected to their current terms as directors prior to September 1, 1977.[3] Consequently, by its terms, § 3114 did not authorize jurisdiction over those defendants when service was attempted, and those defendants should have been dismissed.

Defendants Lilly, McCabe, and Woodhead were elected as directors at the Company's annual meeting in early May, 1978. Thus, they do fall within the scope of the clause applicable to nonresidents accepting elec-

---

1. 10 *Del.C.* § 3114 provides in part:

"(a) Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes his residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as his agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of his duty in such capacity, wheth-

er or not he continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable."

2. Section 3114 was enacted in response to the comments made in footnote 47 and the accompanying text in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), which declared unconstitutional the procedure previously used to obtain jurisdiction over nonresident directors. See n. 8, *infra*.

3. These defendants apparently were serving multi–year terms. See 8 *Del.C.* § 141(d).

tion to directorships after September 1, 1977. Their acceptance of election at the May, 1978 meeting acted as a consent to jurisdiction, and they were served properly under the statute. Having found jurisdiction over these latter defendants properly invoked under § 3114, we must now reach the asserted unconstitutionality of the statute.

■ The defendants argue § 3114 is unconstitutional as applied to them, because they do not have sufficient minimum contacts with Delaware to permit an assertion of jurisdiction in these actions. Their argument is that the decision in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), requires the existence of sufficient minimum contacts between a forum and a defendant in any assertion of jurisdiction. Further, they argue *Shaffer* holds that the mere "status" of director cannot serve as a sufficient contact. They argue they "have simply had nothing to do with the State of Delaware." *Id.*, 433 U.S. at 216, 97 S.Ct. at 2586, 53 L.Ed.2d at 705. We disagree with the defendants' characterization of their relationship with Delaware as well as their characterization of the holding in *Shaffer*.

While it is true that the defendants' numerical contacts with this State are minimal, *i. e.*, limited to their acceptance of directorships in a Delaware corporation subsequent to the effective date of § 3114, the jurisdictional question must be answered by reference to the quality and nature of such contacts; the analysis "cannot be simply mechanical or quantitative." *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159–60, 90 L.Ed. 95 (1945). In the context of the case *sub judice*, the precise inquiry is whether the defendants' acceptance of Delaware corporate directorships is a sufficient contact with this State, such that requiring them to come into the

State to defend suits alleging breach of their fiduciary duties to the Company does not offend traditional notions of fair play and substantial justice. See *id.*, 326 U.S. at 316, 66 S.Ct. at 158; see also *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). "[T]he inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.' *Shaffer v. Heitner, supra*, 433 U.S., at 204, 97 S.Ct., at 2580." *Rush v. Savchuk, supra*, 444 U.S. at 327, 100 S.Ct. at 577, 62 L.Ed.2d at 524.

The instant litigation seeks to hold the defendants accountable to the Company for their actions as directors of a Delaware corporation. Their status as directors and their power to act in that capacity arise exclusively under the Delaware corporation statutes. The defendants accepted their directorships with explicit statutory notice, *via* § 3114, that they could be haled into the Delaware Courts to answer for alleged breaches of the duties imposed on them by the very laws which empowered them to act in their corporate capacities. *Compare Shaffer v. Heitner, supra*, 433 U.S. at 216, 97 S.Ct. at 2586, 53 L.Ed.2d at 705. Moreover, the defendants, by purposefully availing themselves of the privilege of becoming directors of a Delaware corporation, have thereby accepted significant benefits and protections under the laws of this State.[4] See *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958); *Rush v. Savchuk*, 444 U.S. at 327–330, 100 S.Ct. at 577 '78, 62 L.Ed.2d at 525; *Kulko v. California Superior Court*, 436 U.S. 84, 93-94, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132, 142 (1978). Under these circumstances, requiring the defendants to impliedly consent to the assertion of Delaware *in personam* jurisdiction over them in actions alleging breach of their fiduciary obligations to the corporation does not seem unreasonable, at least so long as the consent requirement serves a legitimate State purpose.[5]

4. Among the benefits received by the defendants as directors of a Delaware corporation are: the power to manage the business and affairs of the corporation [8 *Del.C.* § 141(a)], the opportunity to receive interest-free unsecured loans from the corporation [8 *Del.C.* § 143], and

the opportunity to receive indemnification in actions against them by reason of the fact that they are directors [8 *Del.C.* § 145].

5. We emphasize here that § 3114 authorizes service only in actions where directors, trustees or members of the governing body of a Dela-

We believe that Delaware does have a significant and substantial interest in actively overseeing the conduct of those owing fiduciary duties to shareholders of Delaware corporations and that such interest far outweighs any burden to defendants, who have voluntarily associated themselves with such corporations by accepting directorships, in being required to submit to the jurisdiction of our courts.[6] Judicial interpretation of the corporation statutes and judicial enforcement of statutory and non-statutory duties of fiduciaries have long played and continue to play a significant part in the development of Delaware's corporation law. See, e. g., Bell v. Kirby Lumber Corp., Del.Supr., 413 A.2d 137 (1980); Lynch v. Vickers Energy Corp., Del.Supr., 383 A.2d 278 (1977); Singer v. Magnavox Co., Del.Supr., 380 A.2d 969 (1977). While courts of other jurisdictions may apply and enforce existing Delaware law, the development of Delaware law is quite properly the duty and responsibility of the Delaware Courts.

We stress the word "may" because it is by no means certain that another state will give appropriate deference to the substantive concerns of Delaware, as reflected in our corporation law, in shareholder derivative actions involving Delaware corporations. Contrary to the majority's inference in Shaffer v. Heitner, supra, 433 U.S. at 215–16, 97 S.Ct. at 2585–86, 53 L.Ed.2d at 704–05, choice of law analysis, either traditional or modern, does not inexorably lead to the application of Delaware law in such cases. See Silberman, Shaffer v. Heitner: The End of an Era, 53 N.Y.U.L.Rev. 33, 80–84 nn. 259, 265 and 270 (1978); see also Restatement (Second) of the Conflict of Laws §§ 6, 309 (1971).

If it be conceded, as surely it must, that Delaware has the power to establish the rights and responsibilities of those who manage its domestic corporations, it seems inconceivable that the Delaware Courts cannot seek to enforce these obligations but must, rather, leave the lion's share of the enforcement task to a host of other jurisdictions with little familiarity or experience with our law, jurisdictions which may or may not even choose to apply Delaware law depending on the vagaries of each jurisdiction's choice of law rules. We find nothing in "traditional notions of fair play and substantial justice" which compels such anomalous results.

It is appropriate here to briefly highlight some of the significant ramifications which would undeniably (and unfortunately) flow from a conclusion that § 3114 cannot constitutionally be applied to corporate directors in shareholder derivative actions, even assuming Delaware law would be applied to such litigation in another forum.

"If the Supreme Court were to hold the new Delaware long–arm statute [§ 3114] unconstitutional, . . . we would have the anomalous situation of a choice–of–law rule that required the application Delaware law to determine the fiduciary duties of directors and officers of Delaware corporations, and a jurisdictional

---

ware corporation are necessary or proper parties or where the cause of action is grounded on such individuals' breach of the fiduciary duties owed to the corporation and its owners. Thus, § 3114 authorizes jurisdiction only in actions which are inextricably bound up in Delaware law and where Delaware has a strong interest in providing a forum for redress of injuries inflicted upon or by a Delaware domiciliary, i. e., the Delaware corporation.

In the present case, if the complaint allegations are true, it cannot be denied that the defendants have caused a foreseeable injury to a Delaware domiciliary. Because of such foreseeable injury, the absence of physical contacts by the defendants with the State does not preclude the assertion of our judicial jurisdiction.

"'Minimum contacts' . . . need not arise from actual physical activity in the forum state; activities in other forums with foreseeable effects in the forum state will suffice." Great Western United Corp. v. Kidwell, 5th Cir., 577 F.2d 1256, 1266–67 (1978), (citations omitted), rev'd on other grounds, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d. 464 (1979).

6. "[I]f the defendant's contacts are minimal, but the state's interest in providing a forum is strong, the exercise of jurisdiction is constitutional. See McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)." Note, Measuring the Long Arm After Shaffer v. Heitner, 53 N.Y.U.L. Rev. 126, 132 n.40 (1978).

rule that made it impossible, in most cases, to enforce those duties in the Delaware courts. Since the law governing fiduciary duties of corporate management is largely judge–made law, based on rather skeletal statutory provisions, the 'Delaware law' on the subject would consist largely of a quest by courts in other states to determine what the Delaware Supreme Court would say on a subject on which that court would seldom have a chance to speak at all.

"Such a development might not be all bad, since the 'Delaware law' made by courts in other states might evince more concern for the rights of shareholders than the brand produced in the home state. [But see, e. g., *Singer v. Magnavox Co., supra*.] On the other hand, it might create excessive uncertainty about the meaning of the Delaware law as a result of too many forums interpreting it, since there would be no certiorari process available to the Delaware Supreme Court to resolve conflicts.

"Also, a shareholder may not be able to bring a derivative suit against management anywhere else if unable to bring such a suit in Delaware. First, it may be impossible to find any single state in which jurisdiction over all the necessary defendants can be obtained. Second, the major commercial states in which such defendants are most likely to be found generally raise significant, often insurmountable, barriers to the bringing of derivative suits in their courts. Delaware requires a shareholder bringing such a suit to demonstrate shareholder status at the time of the alleged wrongdoing, and, as in the Federal Rules of Civil Procedure, that the shareholder had made a

prior demand on the directors to commence the action on behalf of the corporation. [See 8 *Del.C.* § 327, and Chancery Court Rule 23.1]. Some states further require small shareholders to post security for legal expenses that may be incurred by the corporation, or by the individual defendants, before being permitted to commence the action. The alternative to a derivative action in Delaware, therefore, may be no derivative action at all." Ratner & Schwartz, *The Impact of Shaffer v. Heitner on the Substantive Law of Corporations*, 45 Brooklyn L.Rev. 641, 650–51 (1979).

Clearly, Delaware's interest in providing a sure forum for shareholder derivative litigation involving domestic corporations is firmly grounded on considerations more important and compelling than mere convenience to the parties. Section 3114 evidences legislative recognition of the need for consistency and certainty in the interpretation and application of Delaware corporation law and the desirability of providing a definite forum in which shareholders can challenge the actions of corporate management without having to overcome certain procedural barriers which can be particularly onerous in the context of derivative litigation.[7]

In the final analysis, we agree with the Vice–Chancellor that:

"to the extent that ... jurisdiction over nonresidents is governed by 'traditional notions of fair play and substantial justice,' it would seem that it could now be said that one who, with knowledge of the existence of § 3114, elects to assume ... the duties and responsibilities of a director of a Delaware corporation, and

---

7. We note at this point the United States Supreme Court's recognition that corporate directors' powers are determined by the relevant state's corporation laws, see *Burks v. Lasker*, 441 U.S. 471, 478, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404, 412 (1979), citing *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480, 495–96 (1977), and *Cort v. Ash*, 422 U.S. 66, 84, 95 S.Ct. 2080, 2091, 45 L.Ed.2d 26, 40 (1975), and also note that Court's great reluctance, in very recent decisions, to interfere with state corporate gov-

ernance matters. See *Burks v. Lasker, supra* (federal courts should apply state law governing the authority of independent directors to discontinue derivative suits); *Sante Fe Industries, Inc. v. Green, supra* (Rule 10b–5 will not be used to regulate internal corporate management, especially "where established state policies of corporate regulation would be overridden.") It seems to us that such discernible trends lend emphasis to the need and desirability of state forums where such corporate matters can be conveniently litigated.

who also elects thereby to take advantage of such benefits and protections as are afforded by the law applicable to Delaware corporations, has purposefully availed himself of the privilege of conducting activities in which Delaware has a strong interest (now statutorily expressed) and as to which, in fact as well as in legal theory, Delaware has a heavy responsibility for supervising to the extent that it has permitted, under its authority, the creation of a legal entity in which the public at large may become involved."

*Pomerance v. Armstrong,* Del.Ch., C.A. No. 5613 at 12 (unreported opinion dated July 17, 1979).

We hold, therefore, that as to defendants Lilly, McCabe and Woodhead, § 3114 has been constitutionally applied, and the Court of Chancery did not err in denying the motion to quash service and to dismiss the action against these defendants.

The defendants have essentially argued that Part IV of the majority opinion in *Shaffer v. Heitner, supra,* held that Delaware cannot assert jurisdiction *in personam* in this type of action based solely on the defendants' status as directors of a domestic corporation. We decline the invitation to engage in an extended analysis of the language in Part IV of *Shaffer,* much of which was, we believe, pure dicta and unnecessary to the Court's decision given the jurisdictional context in which *Shaffer* arose. See *id.,* 433 U.S. at 220–22, 97 S.Ct. at 2588–89, 53 L.Ed.2d at 707–09 (Brennan, J., concurring and dissenting). However, we note that obvious and substantial distinctions exist between *Shaffer* and the instant case which justify the result we reach today. As was observed by the North Carolina Court of Appeals in upholding that state's corporate director long arm statute, *N.C.Gen.Stat.* § 55–33,[8] against a constitutional attack similar to that launched in this case:

"[W]e would enumerate the major factual distinctions which would justify our reaching a result different from that in *Shaffer* in the instant case:

"1. The jurisdiction purportedly exercised by the Delaware courts over the fiduciary defendants in *Shaffer* was not derived from any relation the directors had with the corporation incorporated in the forum state; it was derived solely from the sequestration of shares of a corporation belonging to defendant shareholders which were found to be constructively present in the forum state for such purpose. This meant that *any* shareholder, not just a director–shareholder, could be made amenable to the jurisdiction of the Delaware courts by the *quasi in rem* proceeding. In the instant case, however, jurisdiction is derived by reason of the defendant's being a director of the do-

---

8. This statute, cited with at least implicit approval by the *Shaffer* majority, 433 U.S. at 216 n. 47, 97 S.Ct. at 2586, 53 L.Ed.2d at 705, is almost identical to § 3114. This similarity is not mere coincidence, as the legislative synopsis which accompanied § 3114 makes clear:

"The purpose and intent of this legislation is to fill a void in enforcement and interpretation of Delaware corporation laws created by the decision of the United States Supreme Court on June 24, 1977 in *Shaffer v. Heitner.* In that case the Court struck down 10 *Del.C.* § 366 which until now has frequently been the only means whereby nonresident corporate directors of Delaware Corporations could be brought before the courts of this State to answer for their conduct in managing the affairs of the corporation. Indeed, under 10 *Del.C.* § 366, the Courts of this State often provided the only forum where nonresident corporate directors of Delaware corporations from different states could be joined in the same law suit for such purposes. The Supreme Court did note that Delaware's interest in regulating the affairs of corporations governed by Delaware law could be promoted by enactment of a statute subjecting non–resident corporate directors to the jurisdiction of the Delaware courts.

"Delaware has a substantial interest in defining, regulating and enforcing the fiduciary obligations which directors of Delaware corporations owe to such corporations and the shareholders who elected them. In promoting that interest it is essential that Delaware afford a convenient and available forum for supervising the affairs of Delaware corporations and the conduct of directors of Delaware corporations. This legislation is designed to accomplish that objective. The legislation is modeled after similar statutes in Connecticut, North Carolina and South Carolina, which were cited as examples by the Supreme Court in the *Heitner* case and in Michigan."

61 Del. Laws, c. 119 (July 7, 1977).

mestic corporation; his interest as a shareholder or the constructive presence of his shares in North Carolina do not in any way form the basis for our court's jurisdiction.

"2. Delaware had not, by its legislature, enacted any statute clearly designed to protect its interest in providing a forum for suits against fiduciaries of domestic corporations; North Carolina has done so.

"3. The only act of the defendant directors in *Shaffer* upon which jurisdiction was predicated was the purchase of shares in a corporation domesticated in the forum state; jurisdiction in the instant case is predicated upon the acceptance of a fiduciary position in a domestic corporation by an individual when the laws of the state of incorporation unequivocally give notice that such fiduciary may be called upon to defend himself in a forum of that state."

*Swenson v. Thibaut,* 39 N.C.App. 77, 250 S.E.2d 279, 290 (1978), *appeal dismissed,* 296 N.C. 740, 254 S.E.2d 181–83 (1979).

The only substantive difference for present purposes between *Shaffer* and the instant case is the existence of § 3114 as the basis for jurisdiction; we think that is sufficient to render the assertion of *in personam* jurisdiction constitutional in this case. In the context of shareholder derivative litigation, we can see no clearer dividing line between permissible and impermissible assertions of jurisdiction than the line the defendants have already crossed, *i. e.,* accepting election as directors in a domestic corporation.

\*     \*     \*     \*     \*     \*

AFFIRMED, in part; REVERSED, in part.