Richard STERNBERG, Plaintiff,

v.

Thomas F. O'NEIL, Michael G. O'Neil, John O'Neil, Shane O'Neil, William M. Regan, Frank Shakespeare, Hubert J. DeLynn, John B. Poor, Sr., John B. Fitzgerald, Kenneth R. Frankl, David S. Henkel, Richard W. Jencks, James J. Kerley, Alfred J. Moccia, James T. Morley, A. William Reynolds, William F. Spitznagel, Richard B. Tullis, William B. Walsh, Lester Garvin, Warren J. Hayford, D. Bruce Mansfield, T.E. Pittenger, John J. Dalton, Defendants,

and

Gencorp Inc. and RKO General, Inc., Nominal Defendants.

Court of Chancery of Delaware, New Castle County.

Submitted: April 16, 1987.
Decided: Aug. 14, 1987.

Joseph A. Rosenthal, of Morris and Rosenthal, P.A., Wilmington, Stuart H. Savett, and Victor P. Barall, of Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., and Steven R. Rivkin, Washington, D.C., for plaintiff.

R. Franklin Balotti, and C. Stephen Bigler, of Richards, Layton & Finger, Wilmington, Marvin Schwartz, Garrard R. Beeney, and George R. Kramer, of Sullivan & Cromwell, New York City, for individual defendants.

Peter M. Sieglaff, Robert K. Payson, and James F. Burnett, of Potter Anderson & Corroon, Wilmington, for Gencorp Inc. and RKO General, Inc.

## OPINION

BERGER, Vice Chancellor.

Plaintiff brought this double derivative suit against Gencorp Inc. ("Gencorp"), its wholly-owned subsidiary, RKO General, Inc. ("RKO General") and various past and present officers and directors of both corporations. The complaint alleges, among other things, that the individual defendants failed to administer the affairs of Gencorp and RKO General in a fair and careful manner and that they have been wasting the assets of both corporations by promoting and implementing a cover-up of wrongdoing in proceedings before the Federal Communications Commission ("FCC"). The individual defendants are charged with breaches of fiduciary duty allegedly causing RKO General to be disqualified from engaging in the broadcasting business.

All of the individual defendants moved to dismiss the complaint on the grounds that it is barred both by *res judicata* and the statute of limitations. In addition, several of the individual defendants and Gencorp, an Ohio corporation, moved to dismiss for lack of personal jurisdiction. If Gencorp is dismissed, the remaining defendants seek dismissal on the additional ground of failure to join an indispensable party. For the reasons that follow, I conclude that the complaint does not allege a constitutionally permissible basis for the assertion of personal jurisdiction over either Gencorp or those individual defendants who are not directors of RKO General. In addition, I find that Gencorp is an indispensable party. Therefore, the complaint must be dismissed as to all defendants.

To determine whether or not *in personam* jurisdiction exists, a two step analysis must be applied. First, the Court must decide whether Delaware law provides a basis for the assertion of jurisdiction. If so, it must then decide whether that assertion is consistent with the due process guarantees of the Fourteenth Amendment. *See La Nuova D & B S.p.A. v. Bowe Co., Inc.*, Del.Supr., 513 A.2d 764 (1986); *Rabkin v. Philip A. Hunt Chemical Corp.*, Del.Ch., Civil Action No. 7547, Berger, V.C.

(December 4, 1986) [Available on WEST-LAW, DE–CS database].

To satisfy the first prong of this test, plaintiff relies on 8 *Del.C.* §§ 371 and 376, the statutes governing a foreign corporation's qualification to do business in Delaware and the manner in which such a corporation may be served with process. Gencorp does not dispute that it is registered to do business in Delaware or that it was properly served through its registered agent. Thus, the only issue is whether the assertion of jurisdiction over Gencorp in this case satisfies federal constitutional requirements.

Plaintiff argues, in essence, that this second prong of the jurisdictional test is automatically satisfied where a foreign corporation has registered to do business in this state. According to plaintiff, "where a corporation is granted a license to do business," there is "presence," and where there is "presence ... the jurisdiction of the court is undoubted." Plaintiff's Brief at 4. Alternatively, plaintiff argues that registration to do business as a foreign corporation constitutes consent to suit.

None of the cases cited by plaintiff that were decided after *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), base a finding of personal jurisdiction on the theory of corporate "presence." This is not surprising, since the corporate presence approach was abandoned in *International Shoe.* In that case, Chief Justice Stone observed:

> To say that the corporation is so far "present" there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms "present" or "presence" are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process.

*Id.* at 316–317, 66 S.Ct. at 158. The Supreme Court went on to describe as a "legal fiction" the practice of implying consent to service and suit from a corporation's "presence in the state through the acts of its authorized agents." The Chief Justice concluded that it was really the nature of those authorized acts which justified the fiction. *Id.* at 318, 66 S.Ct. at 159. The oft quoted holding in *International Shoe* is that, to obtain personal jurisdiction over a foreign defendant, as a matter of due process, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158, *citing Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). The minimum contacts standard has been reaffirmed on numerous occasions, and its applicability was expressly expanded to include all assertions of state court jurisdiction in *Shaffer v. Heitner,* 433 U.S. 186, 203, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

■ Notwithstanding the continued viability of the *International Shoe* holding, plaintiff argues that the minimum contacts analysis does not apply to cases such as this, where a foreign corporation has registered to do business in the forum state and, thus, may be deemed to have consented to suit. While it does not appear that the Supreme Court has squarely addressed this issue, from its analysis of related issues and, consistent with the weight of authority in the lower federal courts, I conclude that the minimum contacts standard must be satisfied even where a foreign corporation is registered to do business in Delaware.

In *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), decided shortly after *International Shoe,* the Supreme Court suggested that something more than registration to do business was necessary to obtain personal jurisdiction over a foreign corporation. In *Perkins,* the Court was required to decide whether or not the business done in Ohio by a foreign corporation "was sufficiently substantial and of such a nature" as to permit a finding of jurisdiction on an unrelated cause of action. *Id.* at 447, 72 S.Ct. at 419. The Court did not focus on the concept of consent. However, in its

general discussion of the kind of activities which would make it reasonable and just for a state to assert jurisdiction over a foreign corporation, the Court stated:

> The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test.

*Id.* at 445, 72 S.Ct. at 418. This statement is consistent with the Supreme Court's observation in *International Shoe,* noted above, that the justification for the fiction of implied consent must be based on the nature of the foreign corporation's acts within the state.

State and lower federal courts, the only ones to squarely address the issue presented here, have split over whether the appointment of a registered agent, without more, is an adequate basis for personal jurisdiction on an unrelated cause of action. As plaintiff argues, some courts have continued to hold that appointment of a registered agent satisfies due process. *E.g., Vogel v. Tenneco Oil Co.,* 276 F.Supp. 1008, 1012 (D.D.C.1967) (upholding jurisdiction on unrelated cause of action citing as authority the pre-*International Shoe* case of *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939)); *Anderson v. United States,* 220 F.Supp. 769, 770–771 (E.D.Pa.1963) (matter-of-factly upholding jurisdiction with no mention of either *International Shoe* or minimum contacts).

Other courts, however, have held that in the wake of *International Shoe* and its progeny, even if a corporation has appointed a registered agent who is properly served, jurisdiction can only be obtained where minimum contacts are present. *In re Mid–Atlantic Toyota Antitrust Litigation,* 525 F.Supp. 1265, 1277–1278 (D.Md. 1981), *aff'd,* 704 F.2d 125 (4th Cir.1983); *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. 483, 504 (D.Kan.1978); *Schreiber v. Allis–Chalmers Corp.,* 448 F.Supp. 1079, 1091 (D.Kan.1978), *rev'd on other grounds,* 611 F.2d 790 (10th Cir. 1979). The reasoning behind these decisions appears to be, in part, that the corporation gives consent to personal jurisdiction in exchange for the right to do business and thereby avail itself of the benefits and protections of the laws of the forum. *In re Mid–Atlantic Toyota Antitrust Litigation,* 525 F.Supp. at 1278. If the corporation conducts no business, it has not so availed itself; "there is no bargain between the corporation and the forum state and there is no meaning to the corporation's consent to jurisdiction." *Id.* These courts also read the broad language in *Shaffer v. Heitner,* 433 U.S. at 212, 97 S.Ct. at 2583, that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny," as applying equally in the statutory consent context. *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. at 504; *Schreiber v. Allis–Chalmers Corp.,* 448 F.Supp. at 1089.

Some explanation for the split in the courts may be found in the fact that the two cases most supportive of plaintiff's position, *Vogel v. Tenneco Oil Co.* and *Anderson v. United States,* both predate *Shaffer v. Heitner.* However, at least one court has found support in a recent Supreme Court decision for the conclusion that jurisdiction may be obtained solely on the basis of statutory consent. *Augsbury Corp. v. Petrokey Corp.,* N.Y.App.Div., 470 N.Y.S.2d 787 (1983).

The *Augsbury* court relied heavily on *Insurance Corp. of Ireland, Ltd. v. Companie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). In that case, the Supreme Court noted that personal jurisdiction is an individual right which, like other individual rights, may be waived. *Id.* at 704–705. The Supreme Court identified a variety of legal arrangements taken to represent express or implied consent to personal jurisdiction, including advance contractual consent and consent implicit in agreements to arbitrate. *Id.* The Supreme Court also noted that it had upheld "state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures." *Id.* Although the Court did not discuss whether

the concepts of waiver and consent apply to a corporate registration statute, the Augsbury *court held that corporate registration constituted the requisite "voluntary use of certain state procedures" and based jurisdiction thereon.* Augsbury Corp. v. Petrokey Corp., *470 N.Y.S.2d at 789.*

While *Insurance Corp. of Ireland* provides some support for the *Augsbury* holding, the Supreme Court's subsequent decision in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), suggests that jurisdiction based solely on statutory consent would not meet due process requirements. In *Burger King,* the Supreme Court cited *Insurance Corp. of Ireland* in a footnote for the proposition that the personal jurisdiction requirement is a waivable right. However, it went on to qualify that principle saying that, where "forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' ... their enforcement does not offend due process." *Id.* at 472, n. 14, 105 S.Ct. at 2182, n. 14. Thus, even where the parties agree to submit themselves to jurisdiction in a foreign court, there must be a further inquiry as to whether that agreement is reasonable and just in the circumstances. There is no logical basis on which to distinguish between consent by voluntary use of a state procedure and consent by a forum selection agreement. In either case, the assertion of jurisdiction must be found to be reasonable and just.

This requirement would no doubt be met if the minimum contacts standard were satisfied. Indeed, in practice, both tests would likely amount to a consideration of the same factors. It therefore seems appropriate, and consistent with the reasoning of the Supreme Court decisions discussed above and the holdings of many of the more recent lower federal court decisions, to require that minimum contacts be present even where a foreign corporation has registered to do business in Delaware.

The authorities in Delaware support this conclusion. In *Armstrong v. Pomerance,* Del.Supr., 423 A.2d 174 (1980), the Dela-

ware Supreme Court considered whether the directors' long-arm statute, 10 *Del.C.* § 3114, is constitutional. That statute reads, in part:

> Every nonresident ... shall, by such acceptance [of a directorship] or by such service [as a director], be deemed thereby to have consented to the appointment of the registered agent of such corporation ... as his agent upon whom service of process may be made.... [A]ny process when so served shall be of the same legal force and validity as if served upon such director ... within this state.

Notwithstanding the obvious emphasis on consent in this statute, the Delaware Supreme Court stated:

> In the context of the case *sub judice,* the precise inquiry is whether the defendants' acceptance of Delaware corporate directorships is a sufficient contact with this State, such that requiring them to come into the State to defend suits alleging breach of their fiduciary duties to the company does not offend tradition notions of fair play and substantial justice. [Citations omitted.] "[T]he inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.' *Shaffer v. Heitner, supra,* 433 U.S. at 204, 97 S.Ct. at 2580." *Rush v. Savchuk, supra,* 444 U.S. [320] at 327, 100 S.Ct. [571] at 577, 62 L.Ed.2d [516] at 524.

*Armstrong v. Pomerance,* 423 A.2d at 176. Thus, the Delaware Supreme Court reads federal constitutional law as requiring a finding of minimum contacts, even where jurisdiction is based upon statutory consent. *See also Rabkin v. Philip A. Hunt Chemical Corp., supra* (applying minimum contacts analysis where foreign defendant had registered to do business in Delaware).

I now turn to an analysis of whether there are minimum contacts among Gencorp, Delaware and this litigation which will support jurisdiction. As Gencorp points out, plaintiff's complaint alleges only two contacts between that corporation and Delaware: Gencorp's registration to do business and its ownership of a Delaware subsidiary. Neither of these contacts, Gen-

corp asserts, has any connection with this litigation, and, without such a connection, they are insufficient to confer jurisdiction. *Citing Shaffer v. Heitner, supra; Meeker v. Bryant,* Del.Ch., Civil Action No. 6245, Hartnett, V.C. (May 12, 1981); *Waters v. Deutz,* Del.Super., 460 A.2d 1332 (1983); and cases discussed above on minimum contacts.

Plaintiff counters that even where a defendant's contacts are minimal, a strong state interest in providing a forum will compensate for the deficiency. *Citing Armstrong v. Pomerance,* Del.Supr., 423 A.2d 174 (1980). He asserts that Delaware has a strong interest in the subject matter of this litigation, namely, "the conduct of persons and entities owing a fiduciary duty to its domestic corporations (here, RKO General)." Plaintiff's Brief at 9. Plaintiff continues that "crucial issues in this case turn on Delaware's corporation law." *Id.* He attempts to connect these Delaware interests to Gencorp saying: "Gencorp is the parent corporation of RKO General, it controls the Board of Directors, it owes fiduciary obligations to RKO General." *Id.* Plaintiff also notes that Gencorp was a defendant in this Court several years ago. *See Monheit v. O'Neil,* Del.Ch., Civil Action No. 6149.[1]

Gencorp responds that the fiduciary obligations of its officers and directors will be determined not by Delaware law, but by the law of Ohio, its state of incorporation. *Citing Zapata v. Maldonado,* Del.Supr., 430 A.2d 779, 781 (1981); *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). Further, it notes that the incorporation of RKO General occurred in 1955 and was unconnected with this litigation. Thus, Gencorp asserts that *Meeker v. Bryant, supra,* should control. In that case, as in this, the corporate defendant did not create its subsidiary to implement the contested transaction, and this Court refused to find jurisdiction based simply on the ownership of the subsidiary. The lack

of connection between the formation of the subsidiary and the litigation serves to distinguish *Papendick v. Bosch,* Del.Supr., 410 A.2d 148 (1979) (jurisdiction upheld when Delaware subsidiary created expressly to implement contested transaction), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1837, 64 L.Ed.2d 262 (1980), and *Rabkin v. Philip A. Hunt Chemical Corp., supra* (same).

■ I find that the complaint does not allege and the record does not establish that Gencorp has sufficient contact with Delaware to support personal jurisdiction. The fact that Gencorp is registered to do business in Delaware has no relation to this litigation, and there is no evidence that Gencorp has availed itself of its registration to do business here by conducting any activities in this state. The only other contact is the fact that Gencorp created a Delaware subsidiary more than thirty years ago. Where, as here, the subsidiary was not formed to pursue the contested transaction, I find this factor to be insufficient to establish a basis for personal jurisdiction. *Meeker v. Bryant, supra,* slip op. at 10.

Plaintiff asks this Court to delay its decision on the jurisdictional issue to allow him to pursue discovery on the question of Gencorp's contacts with Delaware. However, plaintiff chose to proceed on the theories discussed above without resort to discovery. The complaint does not allege that Gencorp is doing business generally in Delaware, and it does not seem appropriate to allow plaintiff to engage in jurisdictional discovery at this point where he consciously decided to proceed without developing the record.

■ Plaintiff apparently concedes that, if Gencorp is not subject to jurisdiction, the complaint must be dismissed as to all defendants for failure to join an indispensable party.[2] Even if plaintiff has not made this concession, I find that Gencorp is an indispensable party. It is axiomatic that in a

---

1. I will not discuss this point inasmuch as the record in *Monheit* establishes that Gencorp objected to jurisdiction in that case just as it does here. *See* Motion to Dismiss or Stay, Docket #5.

2. Plaintiff made no argument on this point.

normal single derivative suit the corporation is a necessary party. 13 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5997 (rev. perm. ed. 1984). Its presence is required so that it can receive the fruit of any recovery. This logic applies equally in the case of a double derivative suit, and this Court has so held. *Levine v. Milton,* Del.Ch., 219 A.2d 145, 146 (1966); *accord Sylvia Martin Foundation, Inc. v. Swearingen,* 260 F.Supp. 231, 234 (S.D.N.Y.1966). This suit is being brought on behalf of Gencorp. While it is losses that were suffered by its subsidiary that are being sued upon, any recovery would go to the parent, which, thus, must be before the Court.

Based upon the foregoing, the complaint must be dismissed. Plaintiff may file an amended complaint within thirty days of this decision if he alleges a basis on which to obtain personal jurisdiction over Gencorp. Because I find dismissal to be warranted on the ground of lack of jurisdiction, I will not now address the serious *res judicata* issues raised by the individual defendants as an alternative ground for dismissal. If an amended complaint is filed and it alters the substantive allegations in any way, the *res judicata* issues may be somewhat different. Alternatively, if plaintiff proceeds in another jurisdiction, it seems more appropriate to allow that Court to assess the *res judicata* effect of previous decisions and related actions.

Finally, the complaint names as defendants several present or former officers of RKO General as well as officers or directors of Gencorp—Messrs. Michael G. O'Neil, John O'Neil, Fitzgerald, Frankl, Henkel, Morley, Spitznagel, Tullis, Walsh, Garvin, Hayford, Mansfield, Pittenger and Dalton.[3] The complaint does not allege that any of these defendants have any contact with this state. None are directors of the Delaware corporation, RKO General, and the affidavits of Messrs. Janney and Bonsky establish that these individual defendants all are non-residents. It does not appear from the Court's record that any effort has been made to serve these defendants. *See* Letter to the Register in Chancery from Counsel for Plaintiff dated August 26, 1986 attached to Register's Certificate, Docket Number 5. However, even if service had been attempted pursuant to 10 *Del.C.* § 3114, it would have been ineffective inasmuch as these defendants are not directors of a Delaware corporation.

Plaintiff makes no argument in opposition to these defendants' motion to dismiss for lack of jurisdiction, but suggests that some or all of them may be subject to jurisdiction based upon other contacts with Delaware. Again, plaintiff did not seek any discovery on this issue, and he does not even suggest any purported contact which would justify service of process or jurisdiction. Accordingly, these defendants' motion to dismiss for lack of personal jurisdiction is granted irrespective of whether or not plaintiff decides to file an amended complaint asserting a basis for jurisdiction over Gencorp.

IT IS SO ORDERED.

---

**3.** A. William Reynolds was also named as a defendant and alleged to be only an officer and director of Gencorp. However, he was recently elected to the board of directors of RKO General and, accordingly, he has withdrawn his motion to dismiss for lack of personal jurisdiction.