ROLLINS ENVIRONMENTAL SERVIC-
ES (FS) INC., a Delaware
Corporation, Plaintiff,

v.

Robert W. WRIGHT, Richard D. Denni-
son, and Howell H. Howard, Trustees of
Ehlco Liquidating Trust, Successor to
Edward Hines Lumber Co., a dissolved
Delaware corporation, Defendants.

Civ. A. No. 90–053–JRR.

United States District Court,
D. Delaware.

June 14, 1990.

Roderick R. McKelvie, of Ashby, McKelvie & Geddes, Wilmington, Del., for plaintiff.

Martin P. Tully, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Larry Selander, Jeffrey I. Berkowitz, and Roland Spies, of Keck, Mahin & Cate, Chicago, Ill., of counsel, for defendants.

## OPINION

ROTH, District Judge.

Plaintiff Rollins Environmental Services (FS) Inc. ("Rollins"), brings this breach of contract action against the trustees ("the trustees") of the Ehlco Liquidating Trust ("Ehlco"), a trust formed in January, 1989 for the purpose of winding up the affairs of Edward Hines Lumber Co. ("Hines"). Rollins's claim is based on an agreement it entered into with Hines in 1988. The action was commenced in the Superior Court of Delaware, and was removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446. The trustees now move to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.[1] For the reasons that follow, defendants' motions will be denied.

## FACTS

Plaintiff Rollins is a Delaware corporation. Hines was a Delaware corporation before it dissolved. Hines was formerly engaged in the retail and wholesale lumber business. Hines filed a certificate of dissolution with the Secretary of State of the State of Delaware on January 30, 1986, pursuant to 8 *Del.C.* §§ 103 and 275. Under the provisions of 8 *Del.C.* § 278, Hines' corporate existence was continued for three years from the time it filed its certificate for the purpose, *inter alia*, of "prosecuting and defending suits ... and of enabling [it] gradually to settle and close [its] business...." 8 *Del.C.* § 278. During this three year period, in May, 1988, Hines and Rollins entered into an agreement whereby Rollins agreed to perform environmental cleanup work at Hines's Mid-South Wood Products Superfund Site in Mena, Arkansas. Rollins began the cleanup in June, 1988, and planned to be finished by November, 1988. Delays ensued. Rollins submitted change orders and claims for additional compensation during 1988, but these were not resolved to Rollins's satisfaction.

In December of 1988, one month before Hines's corporate existence was to terminate by operation of law,[2] Hines petitioned the Delaware Court of Chancery for the appointment of trustees to take title to Hines's property and wind up its affairs. This petition provided:

> [I]t is in the best interests of the Company and its stockholders that the Company's affairs be wound up *under the jurisdiction of this Court* and that Messrs. Wright, Denison and Howell H. Howard be appointed Trustees pursuant to Section 279 of the Delaware Law and pursuant to the terms of the trust indenture.

(D.I. 15A Exh. 2 at 5) (emphasis added) The petition also states that Wright, Denison and Howard (the defendants in this action) had agreed to serve as trustees, and that Hines's board (of which the trustees were members) had authorized the petition. (*Id.* ¶ 12) On January 18, 1989, Chancellor Allen signed an order appointing Wright, Denison and Howard as trustees of Ehlco. (D.I. 15A Exh. 4) All three trustees are residents of Illinois, and, apart from their service on the board of Hines and as Ehlco trustees, have had no substantial business dealings in Delaware.

---

1. The trustees also assert that this Court should dismiss or stay this action in favor of a first-filed action for declaratory relief in federal court in Illinois. The Court will not address the trustees' stay argument because the Illinois action was dismissed on April 23, 1990.

2. *See* 8 *Del.C.* § 278.

Meanwhile, back in Mena, Arkansas, Rollins was still trying to clean up Hines's Superfund site. After Ehlco was formed, Rollins stopped looking to Hines to compensate it for its additional cleanup expense and began looking to the Ehlco trustees. Rollins completed the cleanup by July, 1989, and entered into negotiations with the Ehlco trustees concerning its claim for additional compensation. The negotiations were unfruitful, and broke off on December 13, 1989.

Rollins instituted this action on December 18, 1989 in the Superior Court of Delaware. Service of process was made on the Secretary of State pursuant to 10 *Del.C.* §§ 3104 and 3114. The trustees filed a notice of removal in this Court on January 26, 1990, and challenge jurisdiction under both provisions.

## I. *In Personam Jurisdiction*

Determining in personam jurisdiction is a two step process. First, the Court must determine whether the relevant statute establishes jurisdiction. Second, if the statute applies, the Court must decide whether such service comports with defendants' rights under the due process clause of the fourteenth amendment. *See United States v. Consolidated Rail Corp.*, 674 F.Supp. 138, 142 (D.Del.1987); *Blue Ball Properties, Inc. v. McClain*, 658 F.Supp. 1310, 1315 (D.Del.1987).

### A. Section 3114 Applies to the Trustees [3]

■ The trustees argue that section 3114 applies solely to individuals in positions of authority in *corporations,* not liquidating trusts. While it is true that section 3114 does not explicitly refer to "liquidating trusts", the language of the statute ("appointed as a . . . trustee") strongly suggests that the General Assembly had corpo-

rate liquidating trusts in mind. The Delaware Court of Chancery agrees:

> I find that, under the facts and circumstances present, the individual defendants have been properly served with process pursuant to 8 [sic] *Del.C.* § 3114, the Delaware Directors Consent Statute, both as directors of MDR Liquidating Corporation, a dissolved Delaware corporation, and as trustees of MDR Liquidating Trust, a trust created to receive the assets of the dissolved corporation[.]

*Gans v. MDR Liquidating Corp.*, Civil Action No. 9630, Hartnett, V.C., mem. op. at 2, 1990 WL 2851 (Del.Ch., Jan. 10, 1990). Section 3114 establishes jurisdiction over the trustees.

### B. Due Process

■ The trustees argue that even if section 3114 applies to them, such service violates their due process rights because they lack sufficient contacts with Delaware to be hailed into court here. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). The Supreme Court has described this liberty interest as requiring "fair warning" before an individual can be subjected to the jurisdiction of a given State. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182.

The Supreme Court has identified two classes of contacts with the forum state that satisfy due process requirements. So called "specific" jurisdiction exists when an out-of-state defendant has "purposefully di-

---

**3.** 10 *Del.C.* § 3114 provides in relevant part:

**§ 3114. Service of process on nonresident directors, trustees or members of the governing body of Delaware corporations.**

Every nonresident of this State who . . . accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State . . . shall, by such acceptance . . . be deemed thereby to have consented to the ap-

pointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as his agent upon whom service of process may be made in all civil actions or proceedings brought in this state, . . . against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of his duty in such capacity. . . .

rected" his activities at residents of the forum state and the litigation results from alleged injuries that "arise out of or relate to those activities." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *see Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182. By contrast, "general" jurisdiction applies when the forum State seeks to assert jurisdiction over the out-of-state defendant in a suit "not arising out of or related to the defendant's contacts with the forum," and requires "continuous and systematic" contact with the forum State. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1872–73.

Although the defendants dispute the fact, this litigation is related to defendants' contacts with Delaware, namely, their role as trustees of Ehlco. Therefore specific jurisdiction applies here. Defendants agreed to serve as trustees of a dissolved Delaware corporation, which transferred all of its property to them. Rollins's claim was outstanding at the time the trustees were appointed. The trustees' powers and obligations flow from Delaware law, and they serve under the continuing supervision of the Delaware Court of Chancery. Defendant Wright, in his capacity as managing trustee, has communicated with Rollins representatives in Delaware regarding Rollins's performance of the contract and has negotiated by telephone with Rollins's representatives in Delaware regarding Rollins's claim. The trustees, collectively, stand in a fiduciary relationship to Hines's creditors and stockholders by virtue of their status as trustees.

Having determined that this case is appropriate for application of specific jurisdiction, the Court must decide whether the exercise of jurisdiction in this case comports with due process. The "constitutional touchstone" of this inquiry is whether the defendants purposefully established "minimum contacts" with the forum State. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183; *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. "Minimum contacts" exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). Even where it is established that this threshold requirement of "anticipation" is met, the Court must examine "other factors to determine whether the exercise of personal jurisdiction would comport with 'fair play and substantial justice'." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160). These factors include the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficiently resolving controversies, and the shared interest of the several States in furthering substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184 (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 1481). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184.

The record in this case establishes that defendants have purposefully established "minimum contacts" with Delaware. The petition for appointment of the trustees (which, parenthetically, the trustees authorized in their role as directors of Hines) states that "it is in the best interests of the Company ... that the Company's affairs be wound up *under the jurisdiction of this Court* and that Messrs. Wright, Denison and Howell H. Howard be appointed trustees pursuant to Section 279 of the Delaware Law...." (D.I. 15A Exh. 2 (emphasis added)) The defendants in this case have already availed themselves of the protection of the Delaware courts on at least one occasion by petitioning the Court of Chancery to appoint a substitute managing trustee for a matter in which the regular trustee had a conflict of interest. (D.I. 15A Exh. 5)

Defendants have also "purposefully derived benefit" from their Delaware connection by serving as Ehlco trustees. *See Burger King,* 471 U.S. at 474, 105 S.Ct. at

2183; *Kulko v. Superior Court of California,* 436 U.S. 84, 96, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978). The trust indenture that delineates the trustees' role provides compensation in the amount of $2000 per month for each trustee, plus such amount as "shall be determined by the Delaware Court of Chancery pursuant to petition by the Trustees." (D.I. 15A Exh. 5) Defendants, having already invoked the protection of the Delaware courts and having derived benefit from their position as trustees, cannot now argue that they could not "reasonably anticipate being hailed into court" here.

Nor does the exercise of *in personam* jurisdiction over the trustees in this case offend traditional notions of "fair play and substantial justice." The trustees knew at the time they accepted their appointment that they would have to resolve Rollins's claim against Hines. Additionally, Delaware has a significant interest in adjudicating this dispute. The Delaware General Assembly has asserted an interest in regulating trustees of liquidating trusts by enacting the statutory framework that governs their activities, and by enacting section 3114, which predicates the jurisdiction of the Delaware courts on the trustees' status as trustees. *Cf. Shaffer v. Heitner,* 433 U.S. 186, 214, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683 (1977) (noting Delaware's failure to assert a strong interest under statute that predicated jurisdiction over corporate directors on the location of property in Delaware, rather than the directors' status as directors). Certainly Rollins could have sued Hines in Delaware, because the dispute would have been between two Delaware corporations. Delaware's interest in the dispute is not appreciably lessened by the fact that Hines's assets have passed to the Ehlco trustees.

▪ This case is distinguishable from the Delaware cases relied upon by the trustees, which hold that jurisdiction over *corporate directors* under section 3114 must be based on a breach of fiduciary duty. *See, e.g., Armstrong v. Pomerance,* 423 A.2d 174 (Del.1980) (section 3114 applies to out-of-state directors in suit for breach of fiduciary duty); *Hana Ranch v. Lent,* 424 A.2d 28, 30 (Del.Ch.1980) ("[I]t is the rights, duties, and obligations which have to do with service as a director of a Delaware corporation which make a director subject to personal service in Delaware under the terms of 10 Del.C. § 3114."); *Pestolite, Inc. v. Cordura Corp.,* 449 A.2d 263, 266 (Del.Super.1982) (mere status as director of a Delaware corporation is insufficient to support jurisdiction under Due Process Clause). These cases impose limitations on the reach of section 3114 but do not address the distinction between trustees of a liquidating trust and directors of a corporation. That distinction warrants a different outcome under the circumstances of this case.

The trustees succeeded to all right, title and interest of Hines in all of Hines's property, and, under Delaware law, have power to "defend, in the name of the corporation, or otherwise" all suits necessary to wind up the corporation's affairs. 8 *Del.C.* § 279. In sum:

> As an agent appointed by the chancery court to wind up the affairs of a Delaware corporation, a trustee or receiver stands in the corporation's shoes. More precisely, under Delaware law the trustee or receiver is the corporation, and he succeeds by operation of law to the corporation's title to its property.... .

Jacobs, *Delaware Receivers and Trustees: Unsung Ministers of Corporate Last Rites,* 7 Del.J.Corp.L. 251, 258 (1983); *see also* E. Folk, R. Ward & E. Welch, *Folk on the Delaware General Corporation Law* § 279.3 at 259 (2d ed. 1988) (describing fiduciary nature of trustee's role).

In the eyes of the law, the Ehlco trustees serve different functions as trustees than they did as Hines's directors. Any person, with a claim against the corporation when it existed, will have a claim against the trustees after the corporation is dissolved, and the trustees are authorized by statute to defend any actions that may be necessary to wind up the corporation's affairs. This will include actions against the trustees for breach of fiduciary duty, as well as actions based on legal obligations of the

dissolved corporation. Section 3114, which speaks of service on nonresident trustees, must be read in light of this statutory framework. When section 3114 is applied to trustees of liquidating trusts, it is not necessary that a breach of fiduciary duty be alleged, but only that the dispute be "related to" the trustees' role as trustees.

In sum, it does not offend due process for the Delaware courts to assert jurisdiction over the Ehlco trustees.

### C. Section 3104

■ Plaintiff's alternative service on defendants under the Delaware Long–Arm Statute, 10 *Del.C.* § 3104, establishes personal jurisdiction as well. The Court assumes that plaintiffs assert jurisdiction under section 3104(c)(1).[4] The Supreme Court of Delaware has construed section 3104(c)(1) to confer so called "transactional" jurisdiction; that is, jurisdiction exists when the conduct in Delaware which forms the basis for jurisdiction has a "nexus" to the substantive claim. *LaNuova D & B, S.p.A. v. Bowe Company, Inc.*, 513 A.2d 764, 768 (Del.1986); *see also United States v. Consolidated Rail Corp.*, 674 F.Supp. 138, 142 (D.Del.1987).

Superficially, this "transactional" limitation on section 3104(c)(1) appears to preclude jurisdiction over the trustees in this case, because the trustees have no overt contacts in Delaware related to this contract dispute. However, section 3104(c)(1) refers to the performance of "any *charac-ter* of work or service in the state." (emphasis added) The trustees sought to become trustees by filing a petition in this State. Their responsibilities include the defense of suits such as this one. The "character" of their work encompasses resolution of this contract dispute. Their acceptance of the position of trustee has a sufficient nexus to the defense of claims against

the trust to confer jurisdiction under section 3104. Finally, as mentioned above, the trustees have sufficient contacts with Delaware so that due process is satisfied.

### II. *Failure to State a Claim*

■ Defendants argue that Delaware law requires dismissal of a complaint that alleges a breach of contract without alleging the existence of a contract, and assert that Rollins has failed to allege that a contract exists. However, the Delaware cases do not impose such a strict pleading rule; they require only that the existence of a contract must be alleged, or inferred. *See Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203–04 (Del.Ch.1988). Not only may a contract be inferred from plaintiff's complaint in this case, but defendants have appended a copy of the written agreement to their opening brief. (D.I. 7 at A13)

More importantly, defendants' argument is contrary to the liberal pleading practice contemplated by the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 8. In fact, Rollins's amended complaint, which is roughly two pages long, is modelled directly on Form 5, contained in the Appendix of Forms to the Federal Rules of Civil Procedure.[5] (D.I. 5) Rule 84 states that "[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed.R.Civ.P. 84. Rollins should be commended, not penalized, for its adherence to the spirit of the Rules. Defendants' motion to dismiss for failure to state a claim upon which relief can be granted will be denied.

### CONCLUSION

The defendants in this action were properly served under both 10 *Del.C.* § 3114, and 10 *Del.C.* § 3104. This service does

---

**4.** Section 3104(c)(1) provides:

As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State.

**5.** Form 5 is a form complaint for goods sold and delivered. The contract at issue in this case is not, strictly speaking, a contract for the sale of goods. This distinction does not mean that the form is inappropriate as a guide in this case. A similar form is appended as form 5 to the Superior Court Civil Rules.

not violate defendants' due process rights. Defendants' motion to dismiss for lack of personal jurisdiction will be denied. Defendants' motion to dismiss for failure to state a claim upon which relief can be granted will also be denied. An appropriate order will follow.